No. 62,399

In the Matter of FREDERICK M. JANTZ, *Respondent.*

(763 P.2d 626)

Opinion filed October 28, 1988.

*Stanton A. Hazlett,* deputy disciplinary administrator, argued the cause for petitioner.

*Richard O. Skoog,* of Skoog and Latimer, of Ottawa, and *Frederick M. Jantz,* pro se, argued the cause for respondent.

*Per Curiam:* This is an original attorney discipline proceeding, filed by Bruce E. Miller, Disciplinary Administrator, against Frederick M. Jantz, of Garnett, Kansas, an attorney duly admitted and licensed to practice law in the State of Kansas. The facts are not disputed.

On May 4, 1987, Jantz deposited $8,534.61 in his attorney trust account at the Garnett State Savings Bank. This money had come to the attorney through protracted litigation and was to be held for his client, the John Deere Company, until various other aspects of the lawsuit were resolved. Jantz later withdrew the funds from his trust account and converted them to his personal use. This conduct was concealed from the client. Judge James J. Smith questioned Jantz on October 7, 1987, concerning the John Deere funds and Jantz told the judge that he had two trust accounts. On October 29, 1987, Judge Smith again questioned Jantz and Jantz at first provided a satisfactory explanation. Later during that conversation, however, Jantz admitted that he did not have the client's money in any account. Judge Smith advised Jantz that these matters would be reported to the county attorney and to the disciplinary administrator. Judge Smith's letter to the disciplinary administrator, dated that same date, forms the basis for this proceeding.

On November 5, 1987, Judge Smith entered an order directing Jantz to pay the John Deere funds to the Clerk of the Anderson County District Court. On November 18 and 20, Jantz delivered payments to the Clerk totalling $8,534.61. The client funds have thus been fully restored.

A formal hearing was held before a disciplinary panel of the

State Board for Discipline of Attorneys on September 16, 1988. Respondent appeared in person and by counsel. By answer, he admitted the charges filed against him by the disciplinary administrator. He did not dispute the charges, but offered substantial evidence in mitigation. The panel found that Jantz, by his actions, had violated DR 1-102 (1987 Kan. Ct. R. Annot. 123) and DR 9-102 (1987 Kan. Ct. R. Annot. 157-58) by withdrawing client funds in the sum of approximately $8,500 from his trust fund, and by converting said funds to his personal use; and that he had violated DR 7-102 (1987 Kan. Ct. R. Annot. 147) in concealing his misconduct from his client and in making false statements to Judge Smith.

The background information comes largely from the evidence in mitigation offered by respondent at the panel hearing. The panel summarized it in a unanimous report as follows:

"10. Prior to attending law school at the University of Kansas, Respondent was a life-long resident of McPherson, Kansas. Mr. Jantz's father owned the John Deere dealership in McPherson, and Respondent's representation of John Deere company stemmed from that relationship. Despite his admitted conversion of trust funds, Respondent continues to be retained by John Deere Company.

"11. After the death of Clark Howerton [Mr. Jantz's senior law partner] in 1982, Respondent purchased a large older home, antique furniture, and two antique cars. Mr. Jantz described his relationship with Mr. Howerton as personal and dependent, and Mr. Jantz described the loss of Mr. Howerton as deeply painful. However, Respondent appears to have believed that the acquired law practice would support a lifestyle in excess of his actual means.

"12. Respondent's father was diagnosed as having cancer in October, 1980, but the elder Jantz survived until August 16, 1987. The added complication of a brain tumor was discovered during November, 1984, and Respondent began making frequent weekend trips to the family residence in McPherson. As his father's condition worsened, Respondent visited the family each weekend and began to disregard his law practice. By the date of his father's death, Mr. Jantz testified that his law practice could not support office overhead let alone his personal debts. Against this backdrop, Mr. Jantz began drawing client funds from his trust account.

"13. When confronted by Judge Smith during October, 1987, Mr. Jantz described his reaction as severe depression and embarrassment. Mr. Jantz remained in his residence for several days until Judge Smith, W. H. Craig of Garnett State Savings Bank, and R. G. Fraker, a Garnett clothier, appeared at his door. Those gentlemen were concerned about Respondent's state of mind, and they urged him to face facts and deal with his problems. That evening, Mr. Jantz went to his office and prepared a complete list of his debts. He met with Judge Smith the following morning to discuss corrective action. An appointment was made that day with Carol George of the Southeast Kansas Mental Health Center. Respondent has met with Ms. George on a weekly basis to address [his] problems . . . and he plans to continue with counselling on an indefinite basis.

"14. Judge Smith contacted Richard O. Skoog to request representation of Mr. Jantz in disciplinary proceedings. Messrs. Fraker and Craig offered to manage his business accounts and expenses. Mr. Jantz removed himself as signatory from his general office account, giving control of his receipts and accounts payable to those businessmen. Arrangements were made to surrender his residence to the mortgagee by deed in lieu of foreclosure. Various furnishings and other personal property have been sold to liquidate other creditor claims, and Mr. Jantz has agreed to pay any deficiency resulting from the resale of his home. Approximately $58,000.00 in debts have been paid to date, and Respondent believes that his law practice will support the payment of other indebtedness in full. He expects to owe no more than ten or fifteen thousand dollars by July, 1988.

"15. Mr. Jantz has taken steps to staff his law office within his means. A full-time secretary was hired recently, and Mr. Jantz has disposed of an office computer which is not essential to his practice.

"16. Respondent has apologized to Judge Smith and members of the Garnett bar for his misconduct and deceit. Judge Smith has recently appointed Respondent to serve as special prosecutor in five matters in which the [County] Attorney has conflicts of interest.

"17. Mr. Jantz reported his misconduct to Judge [Leighton] Fossey and requested extended supervision of his law practice, including full disclosure of general account and trust account transactions with unrestricted access to his office files. Judge Fossey will retire from the bench in late 1988, and he has volunteered to monitor and audit Respondent's law practice. Mr. Jantz welcomes the active involvement and oversight in his personal and professional affairs by Judges Fossey and Smith and Messrs. Craig and Fraker.

"18. The testimony of Robert W. Wise [an attorney of McPherson, Kansas] is compelling. Mr. Wise is an experienced and respected member of the bar who has represented the Jantz family for 25 years and has known Respondent since childhood. Mr. Wise considers Mr. Jantz to be intelligent, responsible, and capable of conducting a successful law practice.

"19. Mr. Jantz has demonstrated that he is contrite and determined to permit no recurrence of the events leading to this proceeding. Apart from the offenses established herein, there is no evidence that Respondent is unfit or incompetent to practice law. On the contrary, the community of Garnett has demonstrated strong support for Mr. Jantz, and he testified that his practice has grown substantially in recent months."

The conclusions of law and recommendations of the hearing panel are extensive and carefully drawn. The panel considered this an unusual and unique case, and for the reasons stated in their report, the panel recommends that respondent be disciplined by suspension, but that he be placed on probation under strict supervision for a period of two years, and be permitted to practice law during that time. We have previously disposed of disciplinary cases by imposing suspension, either for a fixed period of time or for an indefinite time, but we have not used

probation nor have we "suspended" the execution of such suspension. However, we are inclined to follow the recommendations of the panel in this instance. Therefore, we set forth the conclusions and recommendations of the panel in full. They read as follows:

"CONCLUSIONS OF LAW AND RECOMMENDATIONS

"1. Respondent is guilty of serious misconduct including conversion of client funds and lying to the bench. Violations of DR 1-102, 7-102, and 9-102 are admitted by Mr. Jantz. Suspension from the practice of law is the customary and appropriate discipline for such conduct.

"2. Respondent has presented evidence of mitigating circumstances which is undisputed and persuasive. Mitigating factors do not justify or excuse professional misconduct, and Respondent has made no suggestion to the contrary. The privilege of practicing law presupposes that a lawyer is capable of recognizing misconduct and its impact on the profession. The imposition of discipline is automatic in this case, but the degree and duration of punishment must serve the interest of justice. With those qualifications, the hearing panel concludes that this matter is unique for the following reasons:

"a. Open and candid admission of misconduct to the client, bench and bar;

"b. Active cooperation with all participants in the disciplinary process;

"c. Prompt and voluntary repayment of the misappropriated funds;

"d. Confinement of misconduct to a brief interval of severe emotional distress (abated prior to the imposition of discipline and monitored by professional counselling of indefinite duration);

"e. Initiation and implementation of a suitable and adequate program of rehabilitation prior to the commencement of disciplinary proceedings and not imposing administrative burdens on the Supreme Court or the Disciplinary Administrator;

"f. Support of the rehabilitation effort by local judges and other members of the local bar;

"g. Acceptance of continued professional practice by clients;

"h. Confirmation from a reliable source, in this case, Robert W. Wise, former chairman of the KBA Ethics Committee, that Respondent can be expected to meet all professional obligations in the future in a manner worthy of the profession; and

"i. Unanimous conviction of the hearing panel and the Disciplinary Administrator that rehabilitation of Respondent will serve the interests of the profession, and that Respondent's demeanor and conduct are sincere and uncontrived.

"3. Faced with this unique set of circumstances, and recognizing the March 1, 1988, amendment of Supreme Court Rule 203 [see Rule 203(a)(5), Rules Relating to Discipline of Attorneys, March 1, 1988], the panel recommends that the Court enter and publish an Order of Discipline of Frederick M. Jantz on the following terms:

"a. That Respondent be disciplined by suspension from the practice of law pursuant to Supreme Court Rule 203(a)(2), said discipline being probated on the following terms and conditions pursuant to Supreme Court Rule 203(a)(5);

"b. That Respondent's practice of law be supervised by the Honorable Leighton A. Fossey, Administrative Judge, Sixth Judicial District of the State of Kansas, or his designee, for a term of two (2) years after the date of this Order in the manner specified in writing from time to time by the supervising Judge or designee to the Disciplinary Administrator;

"c. That Respondent cooperate with all lay persons, health care providers, and other members of the bench and bar as may be required or approved by the supervising judge in the interest of completing his personal and professional rehabilitation;

"d. That upon report of any misconduct or non-compliance with these orders by Respondent, the Disciplinary Administrator shall promptly inform the Supreme Court and an Order shall be issued directing Respondent show cause why these Orders should not be vacated and such discipline be imposed as circumstances may require; and

"e. Upon receipt of affidavits by Respondent and the supervising judge that Respondent has complied fully with the terms and conditions of this Order and that supervision is no longer necessary, the Disciplinary Administrator shall advise the Supreme Court in writing that the discipline of Respondent has terminated. If the supervising judge declines or fails to file an affidavit of compliance, the Disciplinary Administrator shall investigate to determine whether Respondent should be fully reinstated. In that event, the Disciplinary Administrator may recommend reinstatement, continuation of discipline on specified terms and conditions, or that other discipline be imposed.

"4. The hearing panel wishes to emphasize that the suspension of discipline is appropriate in exceptional cases only. The findings and recommendations of this panel are not intended to establish any form of precedent or standard for future proceedings involving any member of the bar. The ultimate considerations which influence this panel are (A) that immediate discipline of Respondent will not serve the interests of justice, and (B) that adequate safeguards have been initiated by Respondent to insure his full compliance with the disciplinary rules and orders of the Court. The Disciplinary Administrator has made no recommendation for the discipline of Mr. Jantz, and the hearing panel believes that the purposes of Supreme Court Rule 203(a)(5) are served in this instance. It is therefore respectfully recommended that the discipline of Respondent be abated to the extent set forth herein."

We agree with the hearing panel that this case is unique for several of the stated reasons. The conduct complained of here took place within a very short period of time; there were no complaints against respondent prior to these incidents. These took place when respondent was under severe emotional distress, caused by the terminal illness of his father and his own financial problems. Mr. Jantz admitted his misconduct to the judge promptly. He has admitted the misconduct to his client and to the bar where he practices. He made prompt restitution of the funds, which were not at that time due the client but were paid by him into the hands of the clerk of the district court, to

await further order of the court. By the time disciplinary proceedings were underway, Jantz had already made restitution, had commenced professional counselling (which is continuing), and had prepared a plan for retirement of his debts and financial obligations. We were told at the time of oral argument that he has made a substantial reduction of his obligations since the panel hearing in March of this year. His practice is growing, indicating that he is accepted by the members of the bench and bar as well as the residents of the community where he resides and practices.

We agree with the hearing panel that respondent's conduct is indeed serious. The invasion by an attorney of client funds held in a trust account is a violation of the trust which is imposed upon every attorney. Similarly, the making of false statements by an attorney to a judge is a violation of the trust which is imposed upon attorneys by the Canons and which is expected of all members of the bar. We have rarely failed to disbar or suspend any attorney whose professional misconduct parallels that of the respondent. Nevertheless, the majority of this court is inclined to follow the recommendations of the hearing panel in this case. The help and guidance given by Judges Smith and Fossey and by Messrs. Fraker and Craig indicate their sincere interest in Mr. Jantz, and he has responded by taking substantial steps toward rehabilitation.

IT IS THE ORDER OF THE COURT that Frederick M. Jantz be and he is hereby disciplined by being indefinitely suspended from the practice of law; however, that discipline is hereby suspended and probated, and respondent is authorized to continue the practice of law under the terms and conditions proposed by the hearing panel and included within paragraphs Nos. 3 a, b, c, d, and e, set forth above, which terms and conditions are made a part of this dispositional order. We have contacted the Honorable Leighton A. Fossey, and he has agreed to attempt to supervise respondent's practice of law. Respondent is required to cooperate with Judge Fossey; to make all of his files, bank statements, books, and records available to Judge Fossey at any and all times; and to pay any and all travel, telephone, or other expenses necessarily incurred by Judge Fossey in carrying out his supervisory duties.

Probation and supervision shall continue for a period of two

years. Upon receiving the report of the Disciplinary Administrator required by paragraph 3 e above, either at the end of said two year period or in the interim, this court shall, upon notice to the respondent, make such order as justice and equity may require.

IT IS FURTHER ORDERED that this order be published in the Kansas Reports, and that respondent pay the costs of this proceeding.