No. 68,459

IN THE MATTER OF THOMAS N. JONES, *Respondent.*

(843 P.2d 709)

Opinion filed December 11, 1992.

*Paula B. Martin,* deputy disciplinary administrator, argued the cause, and *Bruce E. Miller,* disciplinary administrator, was with her on the formal complaint for the petitioner.

*Michael A. Barbara,* of Topeka, argued the cause and was on the brief for respondent.

*Per Curiam:* This is an original proceeding in discipline filed by the Office of the Disciplinary Administrator against Thomas N. Jones, of Topeka, an attorney duly admitted and licensed to practice law in the state of Kansas. Jones stipulated to the basic facts.

Jones was the Executive Director of the National Organization on Legal Problems of Education (NOLPE), a nonpartisan school law organization headquartered in Topeka, Kansas. His duties included management, programming, and membership functions, as well as governance, of NOLPE.

In January 1989, Jones commenced drawing unauthorized advances on his salary, and by November 1989, he was some $1,300 in arrears. When the books were audited in November, the NOLPE board of directors told Jones "to take care of it." He did not. Instead, starting in November, he began to remove blank checks from the bookkeeper's desk in her absence. The checks were not taken in numerical sequence. Jones stated that all of the checks were reported to the bookkeeper. The bookkeeper filed an affidavit that she discovered the checks were missing, called the bank, and learned Jones had handwritten the checks and made them payable to himself. The bookkeeper confronted him, and copies of the checks subsequently turned up on her desk after she was absent from her desk. Other copies were found in Jones' wastebasket.

The unauthorized checks Jones wrote to himself were written from November 1989 through January 1990. The checks totaled $13,869.77. Payment was stopped on two other checks written on the NOLPE account. Jones wrote one of those checks to himself in the amount of $900. The other was written by Jones in the amount of $475 and was payable to one of his private law clients.

As a fringe benefit of employment, NOLPE provided disability insurance to Jones. Jones personally paid the premiums monthly and was reimbursed by NOLPE annually. The policy year was from November 11, 1989, to November 10, 1990. On November 8, 1989, Jones obtained a check for $492 after advising the bookkeeper that the insurance agent desired payment each six months. Two days later, he advised the bookkeeper that the agent needed the second half of the premium and obtained a second check for $492. Jones retained the money and did not pay the insurance agent. Jones terminated his employment with NOLPE on January 10, 1990, and his benefits ceased that day. NOLPE was entitled to a refund of the unused premium in the amount of $820. No restitution has been made toward this amount.

In addition, Jones wrongfully arranged for two of his individual clients to stay at a hotel in Florida at the expense of NOLPE. NOLPE paid the sum of $382.72 to avoid a lawsuit.

Jones also owes NOLPE restitution for air fare and accommodation expenses incurred by his wife at the 1989 NOLPE convention in San Francisco in the amount of $683.72.

On January 10, 1990, the Executive Committee of NOLPE came to Topeka and confronted Jones, and he resigned. He cashed in his retirement benefits and paid some $6,800 of the misappropriated money. He also paid $230 toward his wife's travel expenses to San Francisco. He has made no other payments, although he did send a $100 check the Monday before the disciplinary hearing convened. NOLPE returned the check because the parties had not agreed that NOLPE would accept payments. There have been no payments since the hearing.

Immediately after terminating his employment with NOLPE, Jones entered treatment for cocaine addiction at the Menninger Clinic. He left the 28-day inpatient treatment program at the end of 22 days. Jones maintains that he "completed" the program and that Menninger's knew he had to leave early when he entered the program. Menninger's report indicates Jones took "flight from treatment."

After this proceeding was commenced, Jones entered St. Francis Hospital and Medical Center's outpatient program to treat his chemical dependency on August 8, 1991. He successfully completed the course and actively participates in Cocaine Anonymous.

The hearing panel recommended Jones be suspended from the practice of law for two years, but that imposition of discipline be suspended and Jones be authorized to practice law under supervision of a member of the Topeka Impaired Lawyers Assistance Committee.

The Disciplinary Administrator recommends disbarment.

Jones and the hearing panel cite *In re Jantz*, 243 Kan. 770, 763 P.2d 626 (1988), as well as other cases in which this court has disciplined but not disbarred the attorney for misappropriating a client's money.

In *Jantz*, $8,534.61 was misappropriated. Full restitution was made prior to disciplinary charges being filed. The court commented:

"We have rarely failed to disbar or suspend any attorney whose professional misconduct parallels that of the respondent. Nevertheless, the majority of this court is inclined to follow the recommendations of the hearing panel

in this case. The help and guidance given by Judges Smith and Fossey and by Messrs. Fraker and Craig indicate their sincere interest in Mr. Jantz, and he has responded by taking substantial steps toward rehabilitation." 243 Kan. at 775.

Comparison of past sanctions imposed in disciplinary cases is of little guidance. Each case is evaluated individually in light of its particular facts and circumstances and in light of protecting the public. The public is protected if attorneys furnish adequate legal services with integrity and honesty.

Furthermore, this court is not bound by the recommendation of a hearing panel. Disbarment is an appropriate sanction in cases involving a serious breach of the disciplinary rules.

Here, Jones misappropriated money from his employer, in large part, to purchase cocaine for his personal use. The fact that the money taken belonged to an employer rather than a client is immaterial because lawyers are subject to discipline for improper conduct in individual, personal, or business activities. *State v. Russell,* 227 Kan. 897, 902, 610 P.2d 1122, *cert. denied* 449 U.S. 983 (1980).

In determining the appropriate discipline to be imposed for violating the disciplinary rules, we consider the facts surrounding the violation as well as any aggravating or mitigating circumstances. *State v. Stakes,* 227 Kan. 711, 720, 608 P.2d 997 (1980). Here, Jones stipulated he violated MRPC 8.4(b) (1992 Kan. Ct. R. Annot. 328) ("commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects"); 8.4(c) ("engage in conduct involving dishonesty, fraud, deceit or misrepresentation"); and 8.4(g) ("engage in any other conduct that adversely reflects on the lawyer's fitness to practice law").

We have never addressed specifically whether addiction to a drug that is unlawful to purchase, possess, or use is an aggravating or mitigating circumstance. The addiction in this case was acquired through recreational use for pleasure. Although we have not considered this issue, other states have.

In 1987, the Supreme Court of California considered a case in which an attorney misappropriated funds in order to finance his cocaine and alcohol addictions. In *Rosenthal v. State Bar,* 43 Cal. 3d 658, 238 Cal. Rptr. 394, 738 P.2d 740 (1987), the court con-

cluded that successful recovery from substance abuse is a mitigating factor, but that addiction to any illicit drug is an aggravating factor as well as a violation of the disciplinary rules. The court stated, however, that protecting the public is the foremost concern. Rosenthal developed the addiction in 1981, withdrew from substance abuse in 1983, and returned to substance abuse in 1983. He entered treatment and had been free of substance abuse for over eight months when the hearing commenced. Thus, *Rosenthal* is similar to this case.

Of interest in *Rosenthal* is the court's emphasis that Rosenthal's "return of client funds after the State Bar's investigation had begun is entitled to no weight in mitigation." 43 Cal. 3d at 664. Full restitution had been made. Nonetheless, Rosenthal was disbarred.

In *In re Demergian,* 48 Cal. 3d 284, 256 Cal. Rptr. 392, 768 P.2d 1069 (1989), Demergian was addicted to cocaine and alcohol. He misappropriated money to purchase cocaine. There, the California Supreme Court stated:

"Finally, cocaine use is hardly a mitigating factor. Petitioner became addicted through voluntary use of an illicit drug. (Compare *In re Nadrich* (1988) 44 Cal. 3d 271, 243 Cal. Rptr. 218, 747 P.2d 1146 [drug addiction resulted from legitimate medical treatment].) Apart from petitioner's subsequent rehabilitative efforts, his use of cocaine increases the danger he presents to the public, the courts, and the reputation of the legal profession. Logically, therefore, it is a factor in *aggravation.*" 48 Cal. 3d at 295.

Recovery from substance abuse remains a mitigating factor. As in *Rosenthal,* the California Supreme Court disbarred Demergian. The court emphasized that Demergian's "addiction resulted from voluntary use of an illegal drug." 48 Cal. 3d at 298.

In *Matter of Zauber,* 122 N.J. 87, 583 A.2d 1140 (1991), the New Jersey Supreme Court held that drug addiction may not mitigate serious ethical infractions such as misappropriation or crimes involving dishonesty, fraud, deceit, or misrepresentation. The court followed the principles set forth in *Matter of Hein,* 104 N.J. 297, 304-05, 516 A.2d 1105 (1986):

" 'The circumstance of the rehabilitated alcoholic or addict is deeply troubling to us. He has presumably recovered from the condition that contributed to . . . [his unethical conduct], and he will probably never again do any harm. But many of the lawyers, nonalcoholic, nonaddicted, disbarred by us . . . would probably never again [commit unethical acts]. . . . Yet

we disbar. That individual harshness . . . is justified only if we are right about the devastating effect misappropriation—unless so treated—has on the public's confidence in the Bar and in this Court. Our primary concern must remain protection of the public interest and maintenance of the confidence of the public and the integrity of the Bar.' " 122 N.J. at 94.

We agree addiction to a substance that is unlawful to purchase, possess, or use should not be a mitigating factor in disciplinary cases and should be considered as an aggravating factor if that addiction is not itself charged as a basis for discipline. Recovery from abuse of an illegal substance should be considered as a mitigating factor.

Here, Jones underwent treatment only after his employment was terminated. Subsequently, he had a relapse, and it was not until a formal complaint had been filed that Jones sought and received treatment at St. Francis. He is now free of substance abuse and would consent to random drug testing.

Jones has not made restitution and, despite his good intentions, has made little effort to do so. In fact, it appears that had he made restitution, this serious matter would never have come to the court's attention.

This court agrees with and applies the rationale set forth by the Nebraska Supreme Court in *State ex rel. NSBA v. Veith*, 238 Neb. 239, 251-52, 470 N.W.2d 549 (1991):

"There has been a trend in recent years toward lighter sanctions, a trend this court is convinced must be reversed. The correlation between the decline of public confidence in the legal profession and the trend toward lighter attorney discipline sanctions is no coincidence.

'[Excuses such as] a "lack of intent to deprive the client of his money" or "personal hardship" . . . stand out like an invitation to the lawyer who is in financial difficulty for one reason or another. All too often he is willing to risk a slap on the wrist, and even a little ignominy, hoping he won't get caught, but knowing that if he is he can plead restitution, [be] duly contrite, and escape the ultimate punishment. The profession and the public suffer as a consequence. The willful misappropriation of client funds should be the Bar's equivalent of a capital offense. [There] should be no excuses.' "

A majority of the court is satisfied the facts of this case warrant disbarment.

IT IS THEREFORE ORDERED that the respondent, Thomas N. Jones, be, and he is hereby, disbarred from the practice of law in the state of Kansas.

IT IS FURTHER ORDERED that the Clerk of the Supreme Court strike the name of Thomas N. Jones from the roll of attorneys admitted to the practice of law in this state and that respondent forthwith comply with the provisions of Supreme Court Rule 218 (1992 Kan. Ct. R. Annot. 176).

IT IS FURTHER ORDERED that this decision be published in the Kansas Reports and that the costs herein be assessed to the respondent.