No. 85,487

In the Matter of W. FREDRICK ZIMMERMAN, *Respondent*.

(19 P.3d 160)

Opinion filed March 9, 2001.

*Stanton A. Hazlett*, disciplinary administrator, argued the cause and was on the brief for petitioner.

*John H. Fields*, argued the cause for respondent. *W. Fredrick Zimmerman*, respondent, argued the cause and was on the respondent's brief pro se.

*Per Curiam*: This is an original proceeding in discipline filed by the office of the Disciplinary Administrator against W. Fredrick Zimmerman of Kansas City, an attorney who has been admitted to the practice of law in Kansas. The hearing panel concluded that respondent had violated KRPC 1.1 (2000 Kan. Ct. R. Annot. 300) (competence), KRPC 1.3 (2000 Kan. Ct. R. Annot. 310) (diligence), KRPC 1.4(a) (2000 Kan. Ct. R. Annot. 320) (communication), KRPC 1.5(d) (2000 Kan. Ct. R. Annot. 330) (fees), and KRPC 3.1 (2000 Kan. Ct. R. Annot. 380) (meritorious claims and contentions). The panel recommended that respondent be suspended from the practice of law for 1 year. Respondent has filed exceptions to the hearing report.

## FINDINGS OF FACT

The panel made the following findings of fact (those to which respondent has filed exceptions are marked with an asterisk):

"2. On September 22, 1993, Denise Duff and her mother Diana Morton, retained the Respondent to represent them in a personal injury case. Mrs. Duff and Mrs. Morton had been injured in an automobile accident in Wyandotte County, Kansas, on September 3, 1993. The Respondent entered into a written fee agreement with Mrs. Duff and Mrs. Morton. The Respondent obtained a satisfactory settlement of the claims arising out of the September 3, 1993, automobile accident.

"3. On March 7, 1994, Mrs. Duff was involved in a second automobile accident. This accident occurred in the state of Texas. Mrs. Duff hired counsel in Texas who settled her claim with the driver of the other automobile.

"4.     Mrs. Duff then retained the Respondent to represent her in a lawsuit against General Motors based upon Mrs. Duff's allegation that the seat belts installed by General Motors were defective and contributed to her injuries. The Respondent and Mrs. Duff agreed to a contingent fee arrangement. However, the Respondent failed to enter into a written contingency fee agreement with Mrs. Duff regarding this representation. On March 7, 1996, the Respondent filed suit against General Motors in Mrs. Duff's behalf.

"5.     After the second accident, but prior to the filing of Mrs. Duff's lawsuit against General Motors, General Motors recalled the subject seat belts.

"6.     During the discovery phase of the case, an expert for General Motors provided an affidavit. In the expert's affidavit, he averred that he had examined Mrs. Duff's seat belts and that, even though they had been recalled, they were not defective.

°"7.     The Respondent did not retain an expert to examine the seat belts in Mrs. Duff's behalf.

"8.     On February 14, 1997, General Motors filed a Motion for Summary Judgment claiming that Mrs. Duff could not establish a genuine issue of material fact regarding the existence of a defect in the seat belt, or of enhanced injuries received as a result of any defect in the seat belts. The Respondent failed to respond to General Motors' Motion for Summary Judgment.

°"9.     On April 12, 1997, the court granted General Motors' Motion for Summary Judgment and dismissed Mrs. Duff's case. The Respondent failed to notify Mrs. Duff that the case had been dismissed.

"10.     At the hearing on this matter, the Respondent testified that he failed to file a response to General Motors' Motion for Summary Judgment because he did not have a good faith basis for filing such a response.

°"11.     After the court granted summary judgment in favor of General Motors, Mrs. Duff contacted the Respondent regarding an unrelated matter. During that telephone conversation, the Respondent informed Mrs. Duff that her case had been dismissed. The Respondent offered to file an appeal to the United States Court of Appeals for the Tenth Circuit.

"12.     The Respondent filed the Notice of Appeal on May 26, 1997, four days outside the statutory thirty-day deadline. General Motors filed a Motion to Dismiss the appeal based on its untimeliness. The Respondent failed to move the district court for an extension of time under Fed. R. App. P. 4(a)(5). The United States Court of Appeals for the Tenth Circuit lacked jurisdiction to extend the time for filing an appeal. As a result, on [December 15, 1997], the United States Court of Appeals for the Tenth Circuit dismissed Mrs. Duff's appeal.

°"13.     After the appeal had been dismissed, the Respondent failed to contact Mrs. Duff and notify her of that fact. Mrs. Duff testified that, some eight months later, on his own, her husband contacted the United States Court of Appeals for the Tenth Circuit and learned that the appeal had been dismissed because it had been filed untimely.

"14.   The Respondent provided Mr. and Mrs. Duff with information regarding his malpractice insurance carrier. The insurance carrier was contacted, however, coverage was denied because the Respondent had failed to renew the insurance policy."

## CONCLUSIONS OF LAW

Based on these findings, the panel came to the following conclusions as to violations:

"1.   Lawyers must provide competent representation to their clients. KRPC 1.1. 'Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation.' *Id.* The Respondent failed to provide Mrs. Duff with competent representation in her cause of action against General Motors when he failed to hire an expert witness, when he failed to respond to the Motion for Summary Judgment filed by General Motors, and when he failed to timely file the Notice of Appeal.

"2.   Attorneys must act with reasonable diligence and promptness in representing their clients. *See* KRPC 1.3. In this case, the Respondent failed to respond to the Motion for Summary Judgment filed by General Motors, and, in addition, the Respondent failed to timely file Mrs. Duff's appeal. As a direct consequence of the Respondent's inaction, Mrs. Duff lost her cause of action and her appeal. Because the Respondent failed to act with reasonable diligence and promptness in representing Mrs. Duff, the Hearing Panel concludes that the Respondent violated KRPC 1.3.

"3.   KRPC 1.4(a) provides '[a] lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.' *Id.* The Respondent failed to notify Mrs. Duff that the district court granted General Motors' Motion for Summary Judgment. Additionally, the Respondent failed to notify Mrs. Duff that the appeal had been dismissed because it had been filed out of time. Because the Respondent failed to keep Mrs. Duff informed about the status of her case, the Hearing Panel concludes that the Respondent violated KRPC 1.4(a).

"4.   KRPC 1.5(d) requires that all contingent fee agreements be made in writing. Because the Respondent failed to reduce his contingent fee agreement with Mrs. Duff to writing, the Hearing Panel concludes that the Respondent violated KRPC 1.5(d).

"5.   KRPC 3.1 prohibits attorneys from bringing or defending a proceeding, or asserting or controverting 'an issue therein, unless there is a basis for doing so that is not frivolous, which includes a good faith argument for an extension, modification, or reversal of existing law.' *Id.* In this case, the Respondent alleged that he did not have a good faith basis for responding to General Motors' Motion for Summary Judgment. It follows naturally then, that, because he did not have a good faith basis for responding to the motion, he could not have a good faith basis for appealing the district court's order sustaining the motion. Accordingly, the

Hearing Panel concludes that the Respondent violated KRPC 3.1 when he filed the Notice of Appeal with the United States Court of Appeals for the Tenth Circuit."

## EXCEPTIONS TO FINDINGS OF FACT

The applicable standards of review were set forth in *In re Albin*, 267 Kan 451, 982 P.2d 385 (1999) and in *In re Berg*, 264 Kan. 254, 269, 955 P.2d 1240 (1998), as follows:

"In disciplinary matters, we have a duty to examine the evidence and determine for ourselves the judgment to be entered. Although the report of the disciplinary panel is advisory only, it will be given the same dignity as a special verdict by a jury, or the findings of a trial court, and will be adopted where amply sustained by the evidence, or where it is not against the clear weight of the evidence, or where the evidence consisted of sharply conflicting testimony. See *In re Carson*, 252 Kan. 399, 406, 845 P.2d 47 (1993); *In re Farmer*, 242 Kan. 296, 299, 747 P.2d 97 (1987); *State v. Zeigler*, 217 Kan. 748, 755, 538 P.2d 643 (1975); *State v. Klassen*, 207 Kan. 414, 415, 485 P.2d 1295 (1971). We apply these rules in considering the evidence, the findings of the panel, and the arguments of the parties in making our determination of whether violations of KRPC exist, and, if they do, deciding upon the appropriate discipline to be imposed. *In re Berg*, 264 Kan. 254, 269, 955 P.2d 1240 (1998)." *In re Albin*, 267 Kan. at 452.

"Supreme Court Rule 211(f) (1997 Kan. Ct. R. Annot. 224) provides in applicable part: 'To warrant a finding of misconduct the charges must be established by clear and convincing evidence.' Clear and convincing evidence is defined in *Modern Air Conditioning, Inc. v. Cinderella Homes*, Inc., 226 Kan. 70, 78, 596 P.2d 816 (1979), to mean 'the witnesses to a fact must be found to be credible; the facts to which the witness testifies must be distinctly remembered; the details in connection with the transaction must be narrated exactly and in order; the testimony must be clear, direct and weighty; and the witnesses must be lacking in confusion as to the facts in issue.' " *In re Berg*, 264 Kan. at 269.

The exceptions filed by respondent do not controvert the findings. Rather, they are more in the nature of explanation as to why the respondent's acts or failures to act were appropriate or otherwise do not support the panel's conclusion that ethical violations occurred. We analyze the exceptions as follows:

FINDING NO. 7: "The Respondent did not retain an expert to examine the seat belts in Mrs. Duff's behalf."

Respondent testified that he discussed the cost of hiring an expert with Ms. Duff, that he advised her he would not advance such cost, and that he received an "indication" client would not

pay the cost. The client testified no such discussion occurred. Respondent advised the investigator assigned by petitioner that he did not hire an expert witness because he felt he had a good enough case without such testimony. Respondent made no mention of cost as a factor in his statements to the investigator. There is no claim that Finding No. 7 is not supported by the evidence or, in any way, is incorrect.

FINDING NO. 9: "On April 12, 1997, the court granted General Motors' Motion for Summary Judgment and dismissed Mrs. Duff's case. The Respondent failed to notify Mrs. Duff that the case had been dismissed."

FINDING NO. 11: "After the court granted summary judgment in favor of General Motors, Mrs. Duff contacted the Respondent regarding an unrelated matter. During that telephone conversation, the Respondent informed Mrs. Duff that her case had been dismissed. The Respondent offered to file an appeal to the United States Court of Appeals for the Tenth Circuit."

The exceptions to these two findings are interrelated and will be discussed together. These findings are essentially uncontroverted by respondent. He states he advised Ms. Duff of the summary judgment by telephone. He tried to infer that this was a telephone call earlier than the one set forth in Finding No. 11. He did not advise her he had not responded to the summary judgment motion. Respondent admits he should have sent the client a letter relative to the entry of summary judgment but characterizes any omission as merely an "oversight" rather than an ethical violation.

FINDING NO. 13: "After the appeal had been dismissed, the Respondent failed to contact Mrs. Duff and notify her of that fact. Mrs. Duff testified that, some eight months later, on his own, her husband contacted the United States Court of Appeals for the Tenth Circuit and learned that the appeal had been dismissed because it had been filed untimely."

Respondent does not dispute any aspect of this finding. He characterizes the failure to notify the client of the dismissal of her appeal as an "oversight" rather than an ethical violation.

We conclude the panel's findings of fact are supported by clear and convincing evidence and adopt them.

## CHALLENGES TO THE CONCLUSIONS OF LAW

Respondent contends none of his acts or omissions in the handling of Ms. Duff's case is sufficient for any finding of an ethical violation. His arguments are in the same vein as set forth in his exceptions to the panel's findings of fact. He does not dispute the factual findings themselves but appears to fault the panel for failing to adopt his favorable spin on the findings of fact and conclude that only "oversights" occurred which do not constitute ethical violations. We also decline to accept Respondent's spin on the facts. We hold the panel's conclusions of law are supported by the findings of fact and adopt them.

Respondent's errors and omissions were the direct and immediate cause of the entry of summary judgment against his client and the dismissal of the appeal. Plus, of course, he failed to keep his client informed of the major events in the case.

## RECOMMENDED DISCIPLINE

The hearing panel's analysis and recommendation as to the appropriate discipline to be imposed is as follows:

"In making this recommendation for discipline, the Hearing Panel considered the factors outlined by the American Bar Association in its Standards for Imposing Lawyer Sanctions (hereinafter 'Standards'). Pursuant to Standard 3, the factors to be considered are the duty violated, the lawyer's mental state, the potential or actual injury caused by the lawyer's misconduct, and the existence of aggravating or mitigating factors.

"*Duty Violated*. The Respondent violated his duty to his client to provide diligent representation.

"*Mental State*. The Respondent was negligent in representing Mrs. Duff.

"*Injury*. In this case, it is impossible to quantify Mrs. Duff's financial injury. Certainly, Mrs. Duff suffered a potential injury when she lost her cause of action against General Motors. To the Respondent's credit, he did not bill Mrs. Duff for the expenses related to this litigation, including out-of-pocket discovery expenses.

"*Aggravating or Mitigating Factors*. Aggravating circumstances are any considerations or factors that may justify an increase in the degree of discipline to be imposed. In reaching its recommendation for discipline, the Hearing Panel, in this case, found the following aggravating factors present:

"Prior Disciplinary Offenses.[1] The Respondent has been disciplined on three prior occasions. First, on June 20, 1991, the Respondent was informally admon-

---

[1] "At the time the Respondent was previously disciplined, the disciplinary rules in the state of Kansas were known as the Model Rules of Professional Conduct rather than the Kansas Rules of Professional Conduct."

ished for having violated MRPC 1.1 and MRPC 1.3. In that case, the Respondent failed to appear in behalf of his client on two separate occasions in a contempt action.

"Then, on July 9, 1996, the Respondent was again informally admonished for having violated MRPC 1.1 and MRPC 1.3. There, the Respondent filed a cause of action in behalf of his clients, but failed to obtain service during the statutory period. As a result, the district court granted summary judgment in favor of the defendants and the Respondent's clients lost their cause of action.

"Finally, on October 20, 1998, the Respondent was publicly censured for having violated MRPC 1.1, 1.3, 1.8(a), (c), and (d). See Disciplinary Administrator's Exhibit I, *In re Zimmerman*, 266 Kan. 115, 117, 965 P.2d 823 (1998). In that case, the Respondent, in behalf of his client, prepared and filed articles of incorporation, but listed himself as the incorporator and first director. The Respondent prepared no bylaws and kept virtually no corporate records, despite serving as its secretary. The Respondent's failure to file an annual report caused the forfeiture of the corporation's charter for a period of time in 1993. The Respondent neglected to draft the shareholder agreement as directed by his clients. *Id.* at 116. The Respondent was dilatory in filing a lawsuit in behalf of the corporation. Additionally, the Respondent had a conflict of interest in that the only fee for his services to the corporation would come from his client's share of the business profit. Finally, the Respondent made false or misleading statements to Stanton A. Hazlett of the Office of the Disciplinary Administrator. *Id.* at 117.

"Pattern of Misconduct. The misconduct found in this case is similar to the misconduct found in the previous cases. In each of the four cases, the Respondent lacked competence and diligence, in violation of KRPC 1.1 and KRPC 1.3. Accordingly, the Hearing Panel concludes that the Respondent has engaged in a pattern of misconduct spanning the past ten years.

"Multiple Offenses. In this case, the Respondent's misconduct involved a variety of offenses. The Respondent violated KRPC 1.1 by failing to hire an expert witness, by failing to respond to the Motion for Summary Judgment filed by General Motors, and by failing to timely file the Notice of Appeal. The Respondent violated KRPC 1.3 when he failed to meet the deadlines. By failing to maintain communication with Mrs. Duff, the Respondent violated KRPC 1.4(a). The Respondent violated KRPC 1.5(d) when he failed to enter into a written fee agreement with Mrs. Duff relative to the representation provided in the General Motors litigation. Finally, the Respondent violated KRPC 3.1 when he filed an appeal without having a good faith basis. Accordingly, the Respondent's conduct constitutes multiple offenses.

"Substantial Experience in the Practice of Law. The Respondent has practiced law for 25 years.

"Mitigating circumstances are any considerations or factors that may justify a reduction in the degree of discipline to be imposed. At the hearing on this matter, the Respondent informed the Hearing Panel that he was not prepared to present evidence or argument regarding mitigation. However, in March, 2000, the Re-

spondent was provided with a copy of the Formal Complaint in this matter. The Formal Complaint, under a heading, "Important Notice About Aggravating or Mitigating Evidence," informed the Respondent as follows:

In the event of a finding by the panel that the Model Rules of Professional conduct have been violated, you should be prepared at the hearing to present any testimony or evidence of mitigating circumstances. The Disciplinary Administrator's Office will present evidence of any aggravating circumstances, including any prior disciplinary record. All evidence of aggravating and mitigating circumstances shall be presented at the hearing. *State v. Scott*, 230 Kan. 564 (1982) and *State v. Martin*, 231 Kan. 481 (1982) address the issue of aggravating and mitigating circumstances and should be carefully reviewed.

"*See* Formal Complaint, pp. 4-5. Despite that "important notice," the Respondent was unprepared to present evidence in mitigation and to respond to the Disciplinary Administrator's recommendation for discipline. To accommodate the Respondent, the Hearing Panel agreed to allow the Respondent to make a written response on or before May 26, 2000.

"On May 26, 2000, the Respondent filed a 'Statement in Mitigation.' The Hearing Panel has thoroughly reviewed the Respondent's writing, and finds that the arguments are not supported by clear and convincing evidence. Accordingly, the Hearing Panel does not find any mitigating circumstances present in this case.

"In addition to the above-cited factors, the Hearing Panel has thoroughly examined and considered Standard 4.42. That standard provides, in pertinent part: Suspension is generally appropriate when . . . a lawyer engages in a pattern of neglect and causes injury or potential injury to a client.

*Id.* In this case, the Respondent engaged in a pattern of neglect and caused potential injury to Mrs. Duff. Accordingly, the discipline outlined in Standard 4.42 applies in this case.

"The Disciplinary Administrator recommended that the Respondent be disciplined by suspension from the practice [of] law for a period of 6 months. The Respondent, in his 'Statement in Mitigation,' requested that he be placed on probation. However, the Respondent failed to comply with the Internal Operating Rules of the Kansas Board for Discipline of Attorneys, E.8. That rule provides:

The recommendation that a responding lawyer be placed on probation is appropriate only in exceptional cases with persuasive mitigating factors. **Probation should never be recommended unless a substantial and detailed plan of probation containing adequate safeguards to protect the public and to ensure respondent's full compliance with the disciplinary rules and the orders of the court has been timely initiated and presented to the hearing panel by the respondent.** *In re Jantz*, 243 Kan. 770, 763 P.2d 626 (1988). Special findings as to the appropriateness of probation and the specific conditions of probation should be included in the Hearing Report.

*Id.* (emphasis added). In this case, the Respondent failed to provide a "substantial and detailed plan of probation." Additionally, the unique circumstances present in *Jantz* are not present in this case. *See Jantz*, 243 Kan. 774-75.

"Because of the presence of aggravating factors, and the absence of [mitigating] circumstances, the Hearing Panel recommends that the Respondent be suspended from the practice of law for a period of one year.

"The Hearing Panel further recommends that reinstatement of the Respondent's privilege to practice law be conditioned on proof that the Respondent has current malpractice insurance."

## DISPOSITION

In his brief, respondent states:

"The Respondent has requested in his Statement in Mitigation a period of supervision in lieu of suspension. Respondent would contend that the statements made in his Statement in Mitigation detailed the nature of his practice with specificity sufficient to allow the fashioning of a sanction of supervision which would satisfy the conclusion of the Hearing Panel that would allow the Respondent to continue in practice and eliminate or greatly minimize the potential of injury to a client including specifically supervision in the area of personal injury claims, further education in office management and procedures as well as proof of liability coverage."

In *In re Long*, 266 Kan. 664, 972 P.2d 773 (1999), we stated:

"We suggest to the members of the bar of this state who have the misfortune to appear before the Disciplinary Board and to the attorneys who represent those individuals that they read with care the Internal Operating Rules of the Kansas Board for Discipline of Attorneys, and in particular I.O. Rule E.8 (1998 Kan. Ct. R. Annot. 272). . . .

"We suggest to counsel that it is imperative that the plan be put into place at the earliest possible moment and submitted to the hearing panel for its consideration and 'fine tuning' before the panel concludes the hearing. Counsel should not wait until oral argument before the panel or the Supreme Court to come forth with a plan and medical evidence." 266 Kan. at 667.

Here, respondent requested that the panel consider probation. However, he did not adhere to any of the requirements of I.O. Rule E.8 (2000 Kan. Ct. R. Annot. 292). He presented a general statement as to subjects that might be included in a probation plan in a communication to the panel after the hearing had concluded. There never was a plan. Probation is not an option in this case. Neither the Disciplinary Administrator's office nor this court is under any duty to fashion a plan of probation. If a respondent seeks consideration of probation, he or she has the duty to develop a

detailed, suitable plan and put it in place at the earliest possible time.

We accept the panel's recommended discipline herein and suspend respondent from the practice of law for a period of 1 year commencing upon the filing of this opinion.

IT IS THEREFORE ORDERED that respondent, W. Fredrick Zimmerman, be suspended from the practice of law in the State of Kansas for a period of 1 year commencing on the date of this opinion.

IT IS FURTHER ORDERED that respondent shall comply with the provision of Supreme Court Rule 218 (2000 Kan. Ct. R. Annot. 266).

IT IS FURTHER ORDERED that a condition of reinstatement be proof of current malpractice insurance.

IT IS FURTHER ORDERED that this opinion be published in the official Kansas Reports and that respondent pay the costs of these proceedings.