IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 124,812

In the Matter of GARY W. LONG II,
*Respondent.*

ORIGINAL PROCEEDING IN DISCIPLINE

Original proceeding in discipline. Opinion filed June 17, 2022. Indefinite suspension.

*Matthew J. Vogelsberg,* Chief Deputy Disciplinary Administrator, argued the cause, and *Stanton A. Hazlett*, Disciplinary Administrator, was on the formal complaint for the petitioner.

*N. Trey Pettlon,* of Law Offices of Pettlon & Ginie*,* of Olathe, argued the cause, and *Gary W. Long II*, respondent, argued the cause pro se.

PER CURIAM: The Office of the Disciplinary Administrator filed this original action against respondent Gary W. Long II, an attorney admitted in 1988 to the practice of law in Kansas. Ten years after his admission, respondent surrendered his license. When he did so, he faced several disciplinary complaints, including one in which a hearing panel of the Kansas Board for Discipline of Attorneys had recommended to this court that his license be suspended for one year. Following respondent's request to surrender his license, this court ordered his disbarment. *In re Long*, 264 Kan. 2, 957 P.2d 1105 (1998). About 17 years later, following a reinstatement hearing and respondent taking and passing the bar for a second time, this court reinstated his license to practice law. *In re Long*, 302 Kan. 746, 357 P.3d 877 (2015).

Just 30 months later, respondent deposited unearned fees into his operating account and thus committed the earliest act that led to this disciplinary action, which

1

consolidates complaints from three of respondent's clients. Respondent filed an answer in which he admitted to the factual allegations in the Disciplinary Administrator's amended formal complaint. In addition, respondent stipulated that he violated:

- Kansas Rule of Professional Conduct (KRPC) 1.3 (2022 Kan. S. Ct. R. at 331) (diligence),
- KRPC 1.4 (2022 Kan. S. Ct. R. at 332) (communication),
- KRPC 1.15 (2022 Kan. S. Ct. R. at 372) (safekeeping property),
- KRPC 8.1 (2022 Kan. S. Ct. R. at 432) (cooperation),
- KRPC 8.4(d) (2022 Kan. S. Ct. R. at 434) (professional misconduct prejudicial to the administration of justice), and
- Former Supreme Court Rule 207(b), now Rule 210(b) (2022 Kan. S. Ct. R. at 263) (cooperation).

Considering those stipulations, a panel of the Kansas Board for Discipline of Attorneys held a hearing at which respondent appeared pro se. The relevant portions of the panel's findings are quoted below.

"*Findings of Fact*

"16.    The hearing panel finds the following facts, by clear and convincing evidence:

"17.    The Supreme Court admitted the respondent to the practice of law in the State of Kansas on April 14, 1988.

"18.    The respondent surrendered his license to practice law and on March 6, 1998, the Supreme Court entered an order of disbarment. Following a reinstatement hearing, on September 24, 2015, the Court reinstated the respondent's license to practice law.

2

"19.    In February 2018, L.J. retained the respondent to bring a quiet title action and to cancel a contract for deed with D.P. The respondent charged L.J. $1,500 in fees and $202.80 in costs to cover filing fees. After sending a demand letter to D.P., on April 17, 2018, the respondent filed a petition in Wyandotte County District Court, case number 2018-CV-327 against D.P. and others to quiet title and to cancel the contract for deed.

"20.    Between March and July 2018, L.J. made payments to the respondent, paying a total of $1,702.08. An invoice that L.J. received from the respondent indicated that he deposited all of her payments directly into his operating account.

"21.    On December 14, 2019, the district court conducted a status conference on the quiet title action. D.P. and the other defendants failed to appear at the status conference. Accordingly, the district court directed the respondent to file a motion for default judgment that would be heard on January 11, 2019.

"22.    The district court continued the hearing scheduled from January 11, 2019, to January 22, 2019. Before the hearing, the respondent did not file a motion for default judgment. While L.J. appeared at the January 22, 2019, hearing, the respondent did not. During the hearing, the respondent sent L.J. a text message falsely stating that the respondent continued the hearing. The registry of actions for the case does not show that the respondent requested a continuance of the January 22, 2019, hearing.

"23.    The district court provided L.J. time to file a motion for default judgment.

"24.    After January 22, 2019, L.J. sent the respondent several messages asking about the status of her case. The respondent failed to respond to those messages.

3

"25.     On March 22, 2019, L.J. sent an email to the disciplinary administrator's office, reporting the respondent's misconduct. The disciplinary administrator considered L.J.'s email as a complaint. The disciplinary administrator sent a letter to the respondent, notifying him of the complaint and asking him to respond within 15 days.

"26.     The respondent received the disciplinary administrator's letter and a copy of L.J.'s complaint. On March 26, 2019, the respondent filed a motion for default judgment on behalf of L.J. That same day, a hearing on the motion was scheduled for April 12, 2019. On April 12, 2019, the district court granted the motion for default judgment.

"27.     The respondent did not provide a written response to the complaint following receipt of the disciplinary administrator's March 22, 2019, letter. On April 25, 2019, the disciplinary administrator sent the respondent a second letter, directing the respondent to respond within 10 days. The respondent did not provide a written response to the complaint following the second letter. As a result, on May 13, 2019, the disciplinary administrator sent the respondent a letter, notifying him that L.J.'s complaint was docketed for a full investigation as DA13312 and that the matter was being referred to John Duma, Chairman of the Wyandotte County Bar Association Ethics and Grievance Committee, who would assign an attorney to investigate. The disciplinary administrator's letter also asked the respondent to respond to L.J.'s complaint within 20 days. The respondent failed to provide a written response within 20 days.

"28.     On May 23, 2019, the respondent filed a motion [f]or writ of restitution to execute the default judgment granted to L.J. That same day, the district court granted the motion.

"29.     Mr. Duma assigned Adam Sokoloff to investigate DA13312. On May 28, 2019, Mr. Sokoloff spoke with the respondent about the matter and requested that he provide a written response to L.J.'s complaint. The respondent provided a written response. In his response, the respondent stated that he received the initial letter from the disciplinary administrator, but rather than sending a prompt reply he focused on resolving L.J.'s case.

4

"30.     On September 27, 2019, the disciplinary administrator sent a letter to the respondent, asking him to provide his trust account records from March 2018 to July 2018 by October 11, 2019. The respondent failed to provide the records or respond to the letter.

"31.     On March 6, 2020, the disciplinary administrator sent a letter and an email message to the respondent, asking him to provide information regarding how he handled the payments he received from L.J. The disciplinary administrator also asked the respondent to provide his bank records for his trust and operating accounts from March 2018 to July 2018. The disciplinary administrator asked the respondent to provide the requested information by March 20, 2020. The disciplinary administrator also warned him that failure to do so would be considered violations of KRPC 8.1(b) and Rule 207. The respondent did not respond to the March 6, 2020, letter.

"*DA13519*

"32.     On March 22, 2019, D.H., an inmate at the El Dorado Corrections facility, filed a *pro se* motion in his Wyandotte County criminal case, case number 2007-CR1587 to correct an alleged illegal sentence. D.H. then contacted the respondent about representing him on the motion. The respondent agreed as long as he was paid a $1,000 fee in full.

"33.     On April 4, 2019, the respondent sent D.H. a letter and invoice for $1,000. The letter stated that the respondent would begin representing D.H. once he received the full $1,000 fee.

"34.     On June 10, 2019, the respondent sent a letter to D.H., stating that he had received a motion to alter or amend the court's order. Enclosed with the letter was an invoice for $1,000. The letter again stated that the respondent would proceed with representation only when the entire $1,000 was paid.

5

"35.     In July 2019, D.H. provided the respondent a check for $800. The respondent deposited those funds into his operating account. On July 11, 2019, the respondent sent D.H. a letter, noting that he had received the check but told D.H. that he would not proceed with representing him until the $1,000 fee was fully paid. Enclosed with the letter was an invoice for the remaining $200.

"36.     On May 18, 2020, the disciplinary administrator received a letter from D.H., noting that he paid the respondent $800, but that the respondent failed to represent him or enter an appearance of any kind on his behalf. D.H.'s letter was docketed for investigation as DA13519. On May 22, 2020, the disciplinary administrator sent a copy of D.H.'s letter to the respondent asking him to respond.

"37.     Upon receiving the disciplinary administrator's letter, the respondent, on June 4, 2020, sent an $800 check to D.H. That same day, the respondent sent a response to the disciplinary administrator regarding D.H.'s complaint.

"38.     Terry Morgan, a special investigator employed by the disciplinary administrator, was assigned to investigate DA13519. On July 9, 2020, Mr. Morgan sent an email message to the respondent, requesting a copy of the front and back of the check he received from D.H. as well as the corresponding deposit slip and other documents. On July 23, 2020, the respondent emailed Mr. Morgan a scanned copy of documents from his file on D.H. The respondent did not include a copy of D.H.'s check to him, nor a copy of a deposit slip associated with the check.

"39.     On August 4, 2020, Mr. Morgan sent an email message to the respondent, again requesting that he provide a front and back copy of the check that D.H. provided to him and the accompanying deposit slip. The respondent did not respond and did not provide the requested documents.

"40.     On August 12, 2021, the day of Mr. Long's disciplinary hearing, D.H. was present as a witness for the disciplinary administrator. As a preliminary matter, D.H. testified that he never received the $800 check that the respondent claimed was sent several months earlier. To resolve this matter, the respondent agreed to look into the

6

status of the check after the hearing and if it had not been cashed, promptly send a check for the $800.

## "*DA13626*

"41.     C.N. retained the respondent on February 20, 2019, to seek expungement of four convictions in Leavenworth County. C.N. was seeking the expungements so that he could lawfully possess two guns that his father owned. C.N. paid the respondent $2,000 for the representation. The respondent deposited the $2,000 directly into his operating account.

"42.     On August 14, 2019, C.N. emailed the respondent asking about the status of the expungement cases. In that email, C.N. reminded the respondent that the respondent promised to send an email message with copies of the court filings. On August 15, 2019, the respondent emailed C.N. and attached copies of drafts of the expungement petitions. In the email message, the respondent asked C.N. if the petitions were accurate. C.N. immediately responded, approving the petitions.

"43.     After the August 15, 2019, email message, C.N. unsuccessfully attempted to contact the respondent on numerous occasions. Finally, on June 30, 2020, C.N. was able to make an appointment and sign the expungement petitions. After signing the petitions, again, C.N. tried unsuccessfully on many occasions to contact the respondent.

"44.     When he was unable to reach the respondent, on January 11, 2021, C.N. filed a complaint with the disciplinary administrator. C.N.'s complaint was docketed for investigation on January 11, 2021.

"45.     On January 22, 2021, Mr. Hazlett filed a motion to continue the respondent's hearing because he had received C.N.'s complaint. On January 26, 2021, the hearing panel granted the motion to continue the hearing, so that there could be adequate time to investigate C.N.'s claims.

7

"46.    On March 8, 2021, the respondent filed the four expungement petitions. After filing the petitions, the respondent sent C.N. an invoice acknowledging the $2,000 payment and requesting a $788 payment for filing fees. C.N. understood that the filing fees were included in the $2,000 payment made at the outset of the representation. On April 28, 2021, the district court granted C.N.'s expungements.

"*Conclusions of Law*

"47.    Based upon the findings of fact and the respondent's admissions in his answer to the amended formal complaint and in his answer to the second amended formal complaint, the hearing panel concludes as a matter of law that the respondent violated KRPC 1.3 (diligence), KRPC 1.4 (communication), KRPC 1.15 (safekeeping property), KRPC 8.1 (cooperation), KRPC 8.4 (professional misconduct) and former Rule 207 (cooperation), as detailed below.

"KRPC 1.3

"48.    Attorneys must act with reasonable diligence and promptness in representing their clients. *See* KRPC 1.3. The respondent failed to diligently and promptly represent L.J. and C.N. The respondent failed to represent L.J. diligently when he failed to timely file a default judgment motion in L.J.'s quiet title action. Additionally, the respondent failed to represent C.N. diligently and promptly when he failed to take any action to accomplish the goals of the representation for approximately two years. Because the respondent failed to act with reasonable diligence and promptness in representing his clients, the hearing panel concludes that the respondent violated KRPC 1.3.

"KRPC 1.4

"49.    KRPC 1.4(a) provides that '[a] lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.' *Id.* In this case, the respondent violated KRPC 1.4(a) in representing both L.J. and C.N. He violated KRPC 1.4(a) by repeatedly failing to return phone calls and

email messages to L.J. and C.N. over extended periods of time. Accordingly, the hearing panel concludes that the respondent violated KRPC 1.4(a).

"KRPC 1.15(a)

"50.     Lawyers must properly safeguard their clients' property. KRPC 1.15(a) specifically provides that:

'(a)     A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained in the state of Kansas. Other property shall be identified as such and appropriately safeguarded. Complete records of such account funds and other property shall be kept by the lawyer and shall be preserved for a period of five years after termination of the representation.'

In this case, the respondent failed to properly safeguard L.J.'s and D.H.'s property. The respondent did not deposit the unearned fees into his attorney trust account. Rather, the respondent deposited the unearned fees into his operating account. Accordingly, the hearing panel concludes that the respondent failed to properly safeguard clients' property, in violation of KRPC 1.15(a).

"KRPC1.15(d)

"51.     KRPC 1.15(d) prohibits attorneys from commingling clients' funds with personal funds. In this case, the respondent violated KRPC 1.15(d) by commingling L.J. and D.H.'s funds with his funds in his operating account. As such, the hearing panel concludes that the respondent violated KRPC 1.15(d) by commingling clients' funds with his funds.

9

"52.    Attorneys must maintain attorney trust account records and produce the records upon request by the disciplinary administrator. KRPC 1.15(d)(2)(v) provides that '[t]he lawyer shall: . . . [p]roduce all trust account records for examination by the disciplinary administrator upon request of the disciplinary administrator.' The respondent failed to produce his attorney trust account records as requested by the disciplinary administrator. Therefore, the hearing panel concludes that the respondent violated KRPC 1.15(d)(2)(v).

"KRPC 8.4(d)

"53.    'It is professional misconduct for a lawyer to . . . engage in conduct that is prejudicial to the administration of justice.' KRPC 8.4(d). The respondent engaged in conduct that was prejudicial to the administration of justice when he failed to file a motion for default judgment on behalf of L.J., when he failed to appear in court on behalf of L.J., when he falsely informed L.J. that the district court continued the case (while L.J. was in court), and when he failed to timely file the petitions for expungement on behalf of C.N. As such, the hearing panel concludes that the respondent violated KRPC 8.4(d).

"KRPC 8.1 and Rule 207(b)

"54.    Lawyers must cooperate in disciplinary investigations. KRPC 8.1(b) and Rule 207(b) provide the requirements in this regard. '[A] lawyer in connection with a . . . disciplinary matter, shall not: . . . knowingly fail to respond to a lawful demand for information from [a] . . . disciplinary authority, . . .' KRPC 8.1(b).

> 'It shall be the duty of each member of the bar of this state to aid the Supreme Court, the Disciplinary Board, and the Disciplinary Administrator in investigations concerning complaints of misconduct, and to communicate to the Disciplinary Administrator any information he or she may have affecting such matters.' Former Rule 207(b).

The respondent knew that he was required to forward a written response to L.J.'s complaint—he had been repeatedly instructed to do so in writing by the disciplinary administrator and the attorney investigator. Additionally, the respondent knew that he was required to forward a copy of D.H.'s check and the respondent's deposit slip as well as his trust account records. Because the respondent knowingly failed to provide a written response to the initial complaint filed by L.J., D.H.'s check, the respondent's deposit slip, and the trust account records, the hearing panel concludes that the respondent violated KRPC 8.1(b) and Rule 207(b).

"*American Bar Association*
*Standards for Imposing Lawyer Sanctions*

"55.     In making this recommendation for discipline, the hearing panel considered the factors outlined by the American Bar Association in its Standards for Imposing Lawyer Sanctions (hereinafter 'Standards'). Under Standard 3, the factors to be considered are the duty violated, the lawyer's mental state, the potential or actual injury caused by the lawyer's misconduct, and the existence of aggravating or mitigating factors.

"56.     *Duty Violated*. The respondent violated his duty to L.J. and C.N. to provide diligent representation and adequate communication. The respondent also violated his duty to L.J. and D.H. by failing to safeguard their property and by commingling his assets with their unearned fees. The respondent violated his duty to the legal system and legal profession to cooperate with disciplinary investigations.

"57.     *Mental State*. The respondent knowingly violated his duties.

"58.     *Injury*. As a result of the respondent's misconduct, the respondent caused actual injury to his clients, the legal system, and the legal profession. The respondent's lack of diligence caused financial harm to L.J. in that third parties lived at her property rent-free while the motion for default judgment was pending. The respondent's misconduct caused harm to C.N. by making him wait more than a year for the expungements, delaying him from reacquiring his gun rights.

11

"Aggravating and Mitigating Factors

"59.    Aggravating circumstances are any considerations or factors that may justify an increase in the degree of discipline to be imposed. In reaching its recommendation for discipline, the hearing panel, in this case, found the following aggravating factors present:

"60.    *Prior Disciplinary Offenses*. The respondent has been previously disciplined on three occasions.

a.    On September 28, 1992, the disciplinary administrator informally admonished the respondent for failing to diligently pursue a discrimination action on behalf of a client.

b.    On July 8, 1994, the Court placed the respondent on supervised probation for two years for violating MRPC 1.1 (competence), MRPC 1.3 (diligence), MRPC 1.4 (communication), MRPC 3.2 (expediting litigation), former Rule 207 (cooperation).

c.    On March 6, 1998, the hearing panel recommended that the respondent be suspended for one year for violating KRPC 1.1 (competence), KRPC 1.3 (diligence), KRPC, 1.4 (communication), KRPC 3.2 (expediting litigation), and KRPC 8.4(a) (professional misconduct). Before the Court considered the final hearing report, the respondent surrendered his license. As a result, the Court entered an order of disbarment.

"61.    *A Pattern of Misconduct*. The respondent has engaged in a pattern of misconduct. In the respondent's representation of L.J. and C.N., the respondent failed to provide diligent representation and adequate communication. In his representation of L.J. and D.H., the respondent failed to safeguard client assets by commingling personal funds with unearned client fees.

12

"62.    *Multiple Offenses*. The respondent committed multiple rule violations. The respondent violated KRPC 1.3 (diligence), KRPC 1.4 (communication), KRPC 1.15 (safeguarding property), KRPC 8.1 (cooperation), and former Rule 207 (cooperation). Accordingly, the hearing panel concludes that the respondent committed multiple offenses.

"63.    *Bad Faith Obstruction of the Disciplinary Proceeding by Intentionally Failing to Comply with Rules or Orders of the Disciplinary Process*. The respondent failed to provide a written response to the first complaint. The respondent was repeatedly instructed to provide written responses. The respondent also failed to provide a copy of the front and back of the check provided by D.H. and the respondent's deposit slip. Finally, the respondent failed to provide a copy of his trust account records. The respondent's repeated failure to cooperate amounts to bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with rules and orders of the disciplinary process.

"64.    *Substantial Experience in the Practice of Law*. The Kansas Supreme Court admitted the respondent to practice law in the State of Kansas on April 14, 1988. At the time of the misconduct, the respondent has been practicing law for more a significant period of time.

"65.    Mitigating circumstances are any considerations or factors that may justify a reduction in the degree of discipline to be imposed. In reaching its recommendation for discipline, the hearing panel, in this case, found the following mitigating circumstances present:

"66.    *Personal or Emotional Problems if Such Misfortunes Have Contributed to Violation of the Kansas Rules of Professional Conduct*. The respondent suffers from adjustment disorder with mixed emotional features (anxiety and depression). It appears that the respondent's anxiety and depression contributed to the misconduct.

"67.    *Remorse*. At the hearing on this matter, the respondent expressed genuine remorse for having engaged in the misconduct.

13

"68.     In addition to the above-cited factors, the hearing panel has thoroughly examined and considered the following Standards:

'4.42     Suspension is generally appropriate when:

> (a)     a lawyer knowingly fails to perform services for a client and causes injury or potential injury to a client; or

> (b)     a lawyer engages in a pattern of neglect and causes injury or potential injury to a client.'

'8.1     Disbarment is generally appropriate when a lawyer:

> . . . .

> (b)     has been suspended for the same or similar misconduct, and intentionally or knowingly engages in further acts of misconduct that cause injury or potential injury to a client, the public, the legal system, or the profession.'

'8.2     Suspension is generally appropriate when a lawyer has been reprimanded for the same or similar misconduct and engages in further acts of misconduct that cause injury or potential injury to a client, the public, the legal system, or the profession.'

"*Recommendation of the Parties*

"69.     The disciplinary administrator recommended that the respondent's license be suspended for a period of one year. The disciplinary administrator also recommended that the respondent undergo a hearing before consideration of reinstatement.

14

"70.     The respondent recommended that he be placed on probation under the terms and conditions of his proposed plan of probation.

"*Discussion*

"71.     When a respondent requests probation, the hearing panel is required to consider Rule 227, which provides:

'(d)     Restrictions on Recommendation of Probation. A hearing panel may not recommend that the respondent be placed on probation unless the following requirements are met:

(1)     the respondent complies with subsections (a) and (c) and the proposed probation plan satisfies the requirements in subsection (b);

(2)     the misconduct can be corrected by probation; and

(3)     placing the respondent on probation is in the best interests of the legal profession and the public.'

"72.     The respondent's proposed plan of probation is not workable, substantial, and detailed. The plan did not include any provisions to address the trust account issues and did not include any provisions to address his struggle with depression. Further, the respondent did not put all the provisions of the plan into place. Finally, based on the respondent's previous record of discipline, placing the respondent on probation is not in the best interests of the legal profession and the citizens of the State of Kansas.

"*Recommendation of the Hearing Panel*

"73.     Based upon the findings of fact, conclusions of law, and the Standards listed above, the hearing panel unanimously recommends that the respondent be

15

suspended for a period of one year. The hearing panel further recommends that before reinstatement, the respondent be required to undergo a hearing under Rule 232.

"74.    Costs are assessed against the respondent in an amount to be certified by the Office of the Disciplinary Administrator."

## DISCUSSION

In a disciplinary proceeding, we consider the evidence, the disciplinary panel's findings, and the parties' arguments and determine whether KRPC violations exist and, if they do, the appropriate discipline. Attorney misconduct must be established by clear and convincing evidence. *In re Spiegel*, 315 Kan. 143, 147, 504 P.3d 1057 (2022); see Supreme Court Rule 226(a)(1)(A) (2022 Kan. S. Ct. R. at 281). "'Clear and convincing evidence is "evidence that causes the factfinder to believe that 'the truth of the facts asserted is highly probable.'"'" 315 Kan. at 147.

Respondent had adequate notice of the formal complaint, the hearing before the panel, and the hearing before this court. And he had the opportunity to present evidence at his hearing and argue before this court. He also had the opportunity to take exception to the hearing panel's findings in its final hearing report. He chose to take no exceptions, and we thus deem the panel's findings of fact admitted. Supreme Court Rule 228(g)(1), (2) (2022 Kan. S. Ct. R. at 287).

These admitted facts establish by clear and convincing evidence the charged misconduct in violation of KRPC 1.3 (diligence), KRPC 1.4 (communication), KRPC 1.15 (safekeeping property), KRPC 8.1 (cooperation), KRPC 8.4 (professional misconduct), and former Rule 207 (cooperation) and support the hearing panel's conclusions of law. We thus adopt both the panel's findings of fact and conclusions of law.

16

The only issue left to be determined is the appropriate discipline. During oral arguments, the Disciplinary Administrator's office proposed following the hearing panel's recommendation for discipline by suspending respondent from the practice of law for a period of one year with a requirement that he undergo a hearing under Supreme Court Rule 232 (2022 Kan. S. Ct. R. at 293) before his license would be reinstated. Respondent asked for a different discipline, requesting we impose a 3-year period of suspension but stay the suspension on the condition he successfully complete a 24-month period of probation under the amended probation plan he had submitted to this court. The amended plan attempted to address the concerns the hearing panel expressed about respondent's original probation plan. Respondent also proposed an alternative of a 90-day suspension followed by a probation period of 24 months.

This court is not bound by the recommendations made by the Disciplinary Administrator or the hearing panel. See *In re Biscanin*, 305 Kan. 1212, 1229, 390 P.3d 886 (2017). Here, a majority of the court declines to follow the recommendations. A minority of the court would follow the recommendations or impose a longer defined period of suspension with probationary terms.

We reach these conclusions under unusual circumstances. We are faced with determining the appropriate discipline of an attorney reinstated to the practice of law following a disbarment—perhaps a first-of-its kind situation in our state's modern history of attorney discipline. The rarity of that circumstance and the realization that respondent has violated a privilege very few attorneys have been allowed weighs heavily in our consideration of the appropriate discipline.

Also, the totality of respondent's disciplinary history reveals patterns of frequent and similar misconduct that has led to escalating levels of discipline up to disbarment.

17

These patterns add weight to a conclusion that suspension is the appropriate discipline. See Standard of Discipline 8.2 ("Suspension is generally appropriate when a lawyer has been reprimanded for the same or similar misconduct and engages in further similar acts of misconduct that cause injury or potential injury to a client, the public, the legal system, or the profession.").

Looking closer at these patterns, we first consider the frequency of respondent's misconduct. The record reveals that respondents' clients and judges have filed numerous complaints. In the first 10 years of respondent's practice—from 1988 until his disbarment in 1998—he faced three disciplinary actions, the later two of which combined multiple complaints. First, he was admonished in 1992. Second, in 1994, he was placed on probation for two years for misconduct arising from three separate complaints. *In re Long*, 255 Kan. 792, 877 P.2d 421 (1994). In the third disciplinary action, a panel recommended we suspend respondent from the practice of law for one year because of his misconduct in handling two matters. He surrendered his license, and this court subsequently disbarred him and, in doing so, noted he had two other pending complaints. *In re Long*, 264 Kan. at 2. Not long after respondent began practicing law again, three clients filed complaints relating to conduct that began about 30 months after this court reinstated respondent's law license. Cumulatively, over the 17-year period of respondent's practice, his clients and judges before whom he appeared filed at least 10 complaints.

In addition to the disturbing frequency of respondent's misconduct, his disciplinary history reveals a similarity in the type of misconduct he commits. In the prior disciplinary proceedings, like here, the respondent's discipline arose because he failed to exercise diligence when managing the legal matters entrusted to him, failed to appropriately and timely communicate with his clients, and failed to fully cooperate with the disciplinary process.

18

Under Standard 8.2, suspension is the appropriate discipline given these patterns and respondent's history of past discipline of admonishment, probation, and disbarment. We also note that, in addition to the discipline imposed by this court, one of the complaints considered in *In re Long*, 255 Kan. 792, related to respondent's handling of an appeal in the Tenth Circuit Court of Appeals. Respondent's conduct caused the Tenth Circuit to bar him from its roll of attorneys and to order disciplinary proceedings in the United States District Court of Kansas. *In re Long*, 255 Kan. at 794-95.

Against these considerations we balance mitigating circumstances surrounding respondent's behavior. The disciplinary panel found significant mitigating factors. Specifically, respondent suffered enormous personal losses and depression during the time of his latest ethical violations. We feel great empathy for the respondent's losses and recognize that depression is often a life-long struggle. We also acknowledge the record suggests respondent is a good person and a knowledgeable attorney who has helped many clients. But it also reveals that respondent struggles mightily to manage the stresses of the practice of law. He also fails to conform his office practices of trust accounting and other processes to our profession's ethical standards.

We cannot overlook that "'[o]ur primary concern must remain protection of the public interest and maintenance of the confidence of the public and the integrity of the Bar.' [Citation omitted.]" *In re Jones*, 252 Kan. 236, 241, 843 P.2d 709 (1992). Those considerations cause the court to unanimously conclude suspension from the practice of law for a period of time is the appropriate discipline.

That leaves the question of what type of suspension is warranted. The Disciplinary Administrator's office recommends a period of definite suspension lasting one year. While a minority of the court would agree or would impose a longer period of definite suspension, a majority of the court's members rejects that recommendation after

19

considering that respondent's previous two-year probation and his extended period of disbarment failed to protect the public.

After carefully considering the evidence presented, as well as the Standards for Imposing Lawyer Sanctions, we adopt the panel's findings and conclusions and indefinitely suspend respondent under Supreme Court Rule 225(a)(2) (2022 Kan. S. Ct. R. at 281). Respondent must comply with Rule 232 if he later seeks reinstatement.

CONCLUSION AND DISCIPLINE

IT IS THEREFORE ORDERED that Gary W. Long II is hereby disciplined by indefinite suspension under Rule 225(a)(2) for violating KRPC 1.3 (diligence), KRPC 1.4 (communication), KRPC 1.15 (safekeeping property), KRPC 8.1 (cooperation), KRPC 8.4 (professional misconduct), and former Rule 207 (cooperation).

IT IS FURTHER ORDERED that respondent must comply with Supreme Court Rule 231 (2022 Kan. S. Ct. R. at 292) (notice to clients, opposing counsel, and courts of record following suspension).

IT IS FURTHER ORDERED that the costs of these proceedings be assessed to respondent and that this opinion be published in the official Kansas Reports.