IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 125,292

In the Matter of TERRENCE J. MALONE,
*Respondent*.

ORIGINAL PROCEEDING IN DISCIPLINE

Original proceeding in discipline. Opinion filed October 14, 2022. Ninety-day suspension.

*W. Thomas Stratton Jr.*, of Disciplinary Administrator's office, argued the cause and was on the formal complaint for the petitioner.

*John J. Ambrosio*, of Morris, Laing, Evans, Brock & Kennedy, Chtd., of Topeka, argued the cause, and *Terrence J. Malone*, respondent, argued the cause pro se.

PER CURIAM:  This is an attorney discipline proceeding against Terrence J. Malone, of Dodge City. Malone received his license to practice law in Kansas in September 1975.

The Disciplinary Administrator's office filed a formal complaint against Malone alleging violations of the Kansas Rules of Professional Conduct (KRPC). Respondent answered the formal complaint on October 4, 2021. On November 22, 2021, respondent entered into a joint agreement with the Disciplinary Administrator's office stipulating to violations of KRPC 1.15 (safekeeping property) (2022 Kan. S. Ct. R. at 372), KRPC 1.8 (conflict of interest, current clients, specific rules) (2022 Kan. S. Ct. R. at 350), KRPC 3.3 (candor toward the tribunal) (2022 Kan. S. Ct. R. at 391), and KRPC 1.9 (duties to former clients) (2022 Kan. S. Ct. R. at 358).

Respondent personally appeared and was represented by counsel at the complaint hearing before a panel of the Kansas Board for Discipline of Attorneys, which was conducted on December 2, 2021. After the hearing, the panel determined that respondent had violated KRPC 1.8(a), KRPC 1.9(c), KRPC 1.15(a) and (c), and KRPC 3.3(a). The panel set forth its findings of fact and conclusions of law, along with its recommendation on disposition, in a final hearing report, the relevant portions of which are set forth below.

FACTUAL AND PROCEDURAL BACKGROUND

"*Findings of Fact*

. . . .

"19.   In mid-July 2019, the respondent entered into an oral agreement with S.R. to represent S.R. in a felony criminal case. S.R. had been charged with one count of aggravated assault, a severity level 7 person felony; criminal threat, a severity level 9 person felony; and battery with physical contact, a class B misdemeanor. S.R. had retained respondent in previous criminal matters.

"20.   The respondent and S.R. agreed that the respondent would charge a flat fee of $5,000.00 for the representation. The agreement was not reduced to writing.

"21.   The terms of the representation agreement were not fully disclosed or transmitted to S.R.

"22.   The respondent received a payment of $1,000.00 toward the flat fee from S.R. in August 2019.

"23.   This $1,000.00 payment reduced the amount owed on the oral flat fee agreement to $4,000.00.

2

"24.  On August 8, 2019, S.R. executed a certificate of title transferring title to a Yamaha motorcycle he owned as collateral for the $4,000.00 balance still owed.

"25.  S.R. understood that the respondent would hold the title to the motorcycle while S.R. made payments and until he fully paid the $4,000.00 balance. Further, S.R. understood that S.R. would retain possession of the motorcycle during the period he made payments toward the balance owed.

"26.  The respondent never advised S.R. in writing of the desirability of seeking the advice of independent counsel before entering into this arrangement with the respondent.

"27.  The respondent and S.R.'s oral agreement did not specify when the balance of the flat fee was due or what circumstances would trigger S.R.'s obligation to deliver the motorcycle to the respondent.

"28.  S.R. did not consent in writing to the essential terms of the payment and collateral arrangement to pay the respondent's fee.

"29.  The respondent and S.R. did not reach an agreement as to the value of the motorcycle. The respondent had not seen the motorcycle and did not know the condition of the motorcycle when he received the title from S.R.

"30.  S.R. made three payments of $100.00 to the respondent between August and September 2019.

"31.  S.R. entered into a plea agreement negotiated on his behalf by the respondent. Around the end of November 2019, S.R. [pled] guilty to one count of criminal threat, a severity level 9 felony. With S.R.'s criminal history, the sentence for this conviction was presumptive probation. S.R. was ultimately placed on probation for 12 months. Based on the allegations in the complaint and S.R.'s criminal history, the outcome was favorable.

3

"32. S.R. never received an itemized invoice from the respondent.

"33. On or about December 3, 2019, S.R. tried to pay the respondent $800.00 toward the balance owed for the respondent's attorney fee. The respondent refused this payment because he believed that the money came from S.R[.]'s mother.

"34. A title to the motorcycle in the respondent's name was issued on December 17, 2019. Around that same time the respondent had the motorcycle insured in his name.

"35. On the title transfer form, the respondent wrote that the value of the motorcycle was $2,000.00. At the time he wrote this, the respondent had not seen the motorcycle and did not know its condition.

"36. In a January 8, 2020, text message to S.R., the respondent wrote:

'[S.R.] I really don't want to sue you. But if the motorcycle is not delivered to my home by next Monday 5pm in good running condition I will have to file suit. If you wish to buy the cycle back for $6,000 then deliver that amount in cash by next Monday by 5pm[.]'

"37. The respondent later looked at S.R.'s file and realized that his request that S.R. pay $6,000.00 was in error because the total fee was only $5,000. Further, his request that S.R. pay $6,000.00 did not account for the $1,300.00 S.R. had already paid the respondent.

"38. On January 27, 2020, the respondent contacted the Dodge City, Kansas Police Department to report that S.R. stole the motorcycle.

"39. When he made this report, the respondent knew that S.R. had recently [pled] guilty to criminal threat, a severity level 9 felony, and was still serving his probation sentence for that conviction.

"40. The respondent testified that at the time he made his theft report he was aware it could have resulted in the revocation of S.R.'s probation.

4

"41.   On January 29, 2020, the respondent filed a petition in Ford County District Court, case number 20-LM-132, against S.R. for replevin and conversion of the motorcycle. In the petition, the respondent listed the estimated value of the motorcycle as $6,000.00 and claimed damages of $50.00 per day beginning December 10, 2019, for lost use of the motorcycle.

"42.   The petition did not mention the agreed $5,000.00 flat fee for the respondent's representation of S.R. or the payments S.R. had made and offered the respondent. During his testimony, the respondent acknowledged that he should have done so.

"43.   When the respondent filed this petition, he still had not seen and did not know the value of the motorcycle. The respondent testified that he listed the value of the motorcycle as $6,000.00 because that is the amount S.R. represented to the respondent the motorcycle was worth.

"44.   On March 1, 2020, the respondent filed an amended petition in 20-LM-132 against S.R. alleging the same claims of replevin and conversion, asserting the value of the motorcycle was $6,000.00, and claiming $50.00 per day damages for loss of use since December 11, 2019.

"45.   On March 2, 2020, through counsel Michael Giardine, S.R. filed a counter-petition in 20-LM-132 against the respondent alleging one count of conversion. In the counter-petition, S.R. estimated the motorcycle was worth $7,500.00.

"46.   On March 15, 2020, the respondent filed an answer to S.R.'s counter-petition. In his answer, the respondent denied that the motorcycle was worth $7,500.00.

"47.   On November 25, 2020, S.R. submitted his disciplinary complaint to the disciplinary administrator's office.

"48.   On May 25, 2021, 20-LM-132 was dismissed.

5

"49.  S.R. later filed a quiet title action against the respondent in Ford County District Court case number 21-CV-69.

"50.  On September 1, 2021, S.R. and the respondent settled this matter via an agreement that the respondent would sign the motorcycle title back over to S.R., would pay the filing fees in 21-CV-69, and would pay $1,686.50 in attorney fees to Mr. Giardine. The $1,686.50 amount represented the difference between $5,386.50 in legal fees incurred by S.R. to defend 20-LM-132 and prosecute 21-CV-69 and the remaining $3,700.00 in legal fees that S.R. owed the respondent.

"51.  The respondent did pay S.R. the $1,686.50 agreed to in the parties' settlement as well as an additional $500.00.

"*Conclusions of Law*

"52.  Based upon the findings of fact, the hearing panel concludes as a matter of law that the respondent violated KRPC 1.8(a) (conflict of interest: current clients: specific rules), 1.9(c) (duties to former clients), 1.15(a) and (c) (safekeeping property), and 3.3(a) (candor toward the tribunal) as detailed below.

"KRPC 1.8(a)

"53.  KRPC 1.8(a) provides:

'(a)  A lawyer shall not enter into a business transaction with a client or knowingly acquire an ownership, possessory, security or other pecuniary interest adverse to a client unless:

(1)  the transaction and terms on which the lawyer acquires the interest are fair and reasonable to the client and are fully disclosed and transmitted in writing to the client in a manner which can be reasonably understood by the client; and

6

(2)    the client is advised in writing of the desirability of seeking and is given a reasonable opportunity to seek the advice of independent legal counsel on the transaction; and

(3)    the client gives informed consent, in a writing signed by the client, to the essential terms of the transaction and the lawyer's role in the transaction, including whether the lawyer is representing the client in the transaction.'

"54.    Comment 16 to KRPC 1.8 states, in part:  'When a lawyer acquires by contract a security interest in property other than that recovered through the lawyer's efforts in the litigation, such an acquisition is a business or financial transaction with a client and is governed by the requirements of paragraph (a).' The hearing panel concludes that the respondent's fee arrangement with S.R. is governed by the requirements of KRPC 1.8(a).

"55.    Here, the evidence showed that the fee agreement between the respondent and S.R. was not in writing. Further, S.R. understood that the respondent would hold the motorcycle title until S.R. paid the balance of the attorney fee, while the respondent believed that he was entitled to take possession of the motorcycle if the full fee was not paid by the end of the representation.

"56.    There was no written agreement stating a date or triggering event when the full balance of the fee was due. Further, there was no written agreement that the respondent could take possession of the motorcycle or obtain title to the motorcycle in the respondent's name if the full balance was not paid by a certain date.

"57.    There was no agreement between the respondent and S.R. regarding the value of the motorcycle.

"58.    Finally, the respondent's communications to S.R. caused uncertainty regarding the amount the respondent believed was owed to him. ([R]espondent requests $6,000.00 from S.R. where oral agreement for fee was $5,000.00 and S.R. had paid the respondent $1,300.00.)

7

"59.    The hearing panel concludes that the terms of the fee agreement, including the terms surrounding title to and possession of S.R.'s motorcycle, were not transmitted to S.R. in writing in a manner that could be reasonably understood by S.R.

"60.    Further, the respondent did not advise S.R. in writing of the desirability of seeking the advice of independent legal counsel on the transaction.

"61.    Finally, S.R. did not sign a written informed consent to the essential terms of the transaction with the respondent or the respondent's role in the transaction.

"62.    The respondent stipulated that he violated KRPC 1.8.

"63.    The respondent's fee agreement with S.R., including the terms surrounding title to and possession of S.R.'s motorcycle, did not comply with KRPC 1.8(a). Accordingly, the hearing panel concludes there is clear and convincing evidence that the respondent violated KRPC 1.8(a).

"KRPC 1.9(c)

"64.    KRPC 1.9(c) provides:

'(c)    A lawyer who has formerly represented a client in a matter or whose present or former firm has formerly represented a client in a matter shall not thereafter:

(1)    use information relating to the representation to the disadvantage of the former client except as these Rules would permit or require with respect to a client or when the information has become generally known; or

(2)    reveal information relating to the representation except as these Rules would permit or require with respect to a client.'

8

"65.   In late November 2019, S.R. entered into a plea agreement and was sentenced to 12-months probation. The respondent represented S.R. in this matter, including plea negotiation and sentencing. Thus, the respondent acquired knowledge about S.R.'s probation status through his representation. Further, the respondent's fee arrangement involving the motorcycle was related to the respondent's representation of S.R.

"66.   On January 27, 2020, the respondent contacted the Dodge City, Kansas Police Department to report that S.R. stole the motorcycle. The respondent knew that his report could disadvantage S.R., including but not limited to potential revocation of S.R.'s probation and S.R.'s incarceration.

"67.   The respondent stipulated that he violated KRPC 1.9.

"68.   The hearing panel concludes there is clear and convincing evidence that the respondent violated KRPC 1.9(c).

"KRPC 1.15(a) and (c)

"69.   Lawyers must keep the property of their clients safe and separate from the lawyer's property. KRPC 1.15(a) requires lawyers to 'hold property of clients . . . that is in a lawyer's possession in connection with a representation separate from the lawyer's own property.'

"70.   Pursuant to KRPC 1.15(c):

'When in the course of representation a lawyer is in possession of property in which both the lawyer and another person claim interests, the property shall be kept separate by the lawyer until there is an accounting and severance of their interests. If a dispute arises concerning their respective interests, the portion in dispute shall be kept separate by the lawyer until the dispute is resolved.'

"71.   The respondent was in possession of the motorcycle title, which was at the center of a fee dispute between the respondent and S.R. It is clear from the evidence that

9

S.R. and the respondent disagreed about the amount of the remaining balance owed to the respondent, when the full balance was due, and how the motorcycle and its title were to be treated in the transaction. Until these disputes were resolved, the respondent was required to keep the motorcycle title separate from his own property. See KRPC 1.15(a) and (c).

"72.    The respondent did not keep the motorcycle title separate from his own property. Instead, the respondent applied to have the title transferred to his name and obtained insurance in his name on the motorcycle.

"73.    Further, the respondent took steps to gain possession of the motorcycle, including reporting to the Dodge City, Kansas Police Department that S.R. stole the motorcycle and filing a petition in 20-LM-132 for replevin and conversion.

"74.    The respondent stipulated that he violated KRPC 1.15.

"75.    Accordingly, the hearing panel concludes there is clear and convincing evidence that the respondent violated KRPC 1.15(a) and (c).

"KRPC 3.3(a)

"76.    KRPC 3.3(a)(1) provides that '[a] lawyer shall not knowingly:  (1) make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer.'

"77.    The respondent wrote that the motorcycle was worth $2,000.00 on the title transfer form. Contrary to the value the respondent listed on the title transfer form, the respondent stated in his petition in 20-LM-132 that the motorcycle was worth $6,000.00.

"78.    Further, the respondent did not advise the district court that the total fee owed was $5,000.00 and that S.R. had already paid $1,300.00 of that amount, meaning that S.R. only owed $3,700.00 at the time the petition was filed.

10

"79. Instead, the respondent stated that the motorcycle was given to the respondent 'as payment for representation,' implying that the amount owed to the respondent was the value of the motorcycle represented in the petition: $6,000.00.

"80. The respondent stipulated that he violated KRPC 3.3.

"81. Accordingly, the hearing panel concludes there is clear and convincing evidence that the respondent violated KRPC 3.3(a).

"*American Bar Association*
*Standards for Imposing Lawyer Sanctions*

"82. In making this recommendation for discipline, the hearing panel considered the factors outlined by the American Bar Association in its Standards for Imposing Lawyer Sanctions (hereinafter 'Standards'). Pursuant to Standard 3, the factors to be considered are the duty violated, the lawyer's mental state, the potential or actual injury caused by the lawyer's misconduct, and the existence of aggravating or mitigating factors.

"83. *Duty Violated*. The respondent violated his duties to his client S.R. and to the legal system.

"84. *Mental State*. The respondent intentionally violated his duties.

"85. *Injury*. As a result of the respondent's misconduct, the respondent caused potential harm and actual harm to S.R. and the legal system. The respondent caused actual harm to S.R. in the form of legal fees and stress associated with the civil lawsuit and retention and transfer to his name of S.R.'s motorcycle title. The respondent caused potential harm to S.R. in the form of possible probation revocation and incarceration by reporting to the Dodge City, Kansas Police Department that S.R. stole the motorcycle.

The respondent caused actual harm to S.R. by creating unnecessary stress about possible negative impact on S.R.'s criminal probation. The respondent caused actual harm to the legal system with his lack of candor to the tribunal.

11

"86. Aggravating circumstances are any considerations or factors that may justify an increase in the degree of discipline to be imposed. In reaching its recommendation for discipline, the hearing panel, in this case, found the following aggravating factors present:

"87. *Prior Disciplinary Offenses*. The respondent has been previously disciplined on one occasion. In August 2008, the respondent entered into a diversion agreement with the disciplinary administrator's office. The respondent successfully completed the diversion and the matter was dismissed on August 29, 2008. The hearing panel notes that this prior discipline is remote in time and unrelated to the current misconduct.

"88. *Dishonest or Selfish Motive*. Respondent had represented S.R. on previous occasions. The behavior that led to this disciplinary complaint was motivated by selfishness grounded in respondent's misguided desire to teach S.R. a lesson in responsibility, including not burdening S.R.'s mother with his debts. Moreover, this selfishness was manifested in respondent's effort to collect money he believed he was owed without regard for the negative impact his actions may have on S.R.—such as reporting to the police that S.R. committed theft, transferring the motorcycle title to his name without resolving the fee dispute with S.R., and engaging in civil litigation adverse to S.R.

"89. *A Pattern of Misconduct*. The respondent has engaged in a pattern of misconduct. The respondent's misconduct was not the result of an isolated act or mistake but was the result of a course of conduct where the respondent engaged in several separate acts, including filing the application for title to the motorcycle, calling the Dodge City, Kansas Police Department to report S.R. stole the motorcycle, filing a petition, amended petition, and answer to counter-petition in 20-LM-132 asserting claims to the motorcycle and asserting an unsupported value. Further, the respondent testified that it was his common practice to not utilize written agreements in all of his cases that did not involve personal injury or workers compensation claims.

12

"90.   *Multiple Offenses*. The respondent committed multiple rule violations. The respondent violated KRPC 1.8(a) (conflict of interest: current clients: specific rules), 1.9(c) (duties to former clients), 1.15(a) and (c) (safekeeping property), and 3.3(a) (candor toward the tribunal).

"91.   *Substantial Experience in the Practice of Law*. The Kansas Supreme Court admitted the respondent to practice law in the State of Kansas in 1975. At the time of the misconduct, the respondent had been practicing law for 44 years.

"92.   Mitigating circumstances are any considerations or factors that may justify a reduction in the degree of discipline to be imposed. In reaching its recommendation for discipline, the hearing panel, in this case, found the following mitigating circumstances present:

"93.   *The Present and Past Attitude of the Attorney as Shown by His or Her Cooperation During the Hearing and His or Her Full and Free Acknowledgment of the Transgressions.* The respondent fully cooperated with the disciplinary process. Additionally, the respondent admitted in his answer some of the facts that gave rise to the violations and entered into a stipulation to other facts and to violating KRPC 1.8, 1.9, 1.15, and 3.3. Further, the respondent settled the civil dispute with S.R., returned the motorcycle title to S.R., and paid S.R. $1,686.50 to cover the difference between S.R.'s legal fees incurred in the civil matters and the amount still owed the respondent as well as $500.00 to reimburse other fees incurred by S.R.

"94.   *Timely Good Faith Effort to Make Restitution or to Rectify Consequences of Misconduct*. As indicated above, the respondent paid S.R. $1,686.50 to cover the difference between S.R.'s legal fees incurred in the civil matters and the amount still owed the respondent as well as $500.00 to reimburse other fees incurred by S.R.

"95.   *Remorse*. At the hearing on this matter, the respondent expressed genuine remorse for having engaged in the misconduct.

"96.   *Remoteness of Prior Offenses.* The misconduct which gave rise to the respondent's 2008 diversion is remote in character and in time to the misconduct in this

13

case. The prior misconduct resulting in diversion involved an improper comment by the respondent during closing argument in a case where he served as a prosecutor.

"97.   *Previous Good Character and Reputation in the Community Including Any Letters from Clients, Friends and Lawyers in Support of the Character and General Reputation of the Attorney*. The respondent is an active and productive member of the bar of Ford County, Kansas. The respondent also enjoys the respect of his peers and generally possesses a good character and reputation as evidenced by the testimony of Representative Bradley Ralph, retired District Court Judge Daniel Love, Glenn Kerbs, and David Rebein, and by 54 letters received by the hearing panel.

"98.   *Respondent's Contribution to the Community*. Evidence presented at the formal hearing established that the respondent's legal services are valuable to his community and that interruption of respondent's practice would pose a significant loss to his community. The hearing panel believes respondent's behavior was clearly inappropriate but not likely to be repeated. As such, in reaching recommended discipline, the hearing panel considered that the respondent's misconduct is unlikely to be repeated and that more severe discipline may inordinately harm the respondent's community and clients he serves.

"99.   In addition to the above-cited factors, the hearing panel has thoroughly examined and considered the following Standards:

'4.12    Suspension is generally appropriate when a lawyer knows or should know that he is dealing improperly with client property and causes injury or potential injury to a client.'

'4.13    Reprimand is generally appropriate when a lawyer is negligent in dealing with client property and causes injury or potential injury to a client.'

'4.32    Suspension is generally appropriate when a lawyer knows of a conflict of interest and does not fully disclose to a client the possible effect of that conflict, and causes injury or potential injury to a client.'

14

'4.33   Reprimand is generally appropriate when a lawyer is negligent in determining whether the representation of a client may be materially affected by the lawyer's own interests, or whether the representation will adversely affect another client, and causes injury or potential injury to a client.'

'6.12   Suspension is generally appropriate when a lawyer knows that false statements or documents are being submitted to the court or that material information is improperly being withheld, and takes no remedial action, and causes injury or potential injury to a party to the legal proceeding, or causes an adverse or potentially adverse effect on the legal proceeding.'

'6.13   Reprimand is generally appropriate when a lawyer is negligent either in determining whether statements or documents are false or in taking remedial action when material information is being withheld, and causes injury or potential injury to a party to the legal proceeding, or causes an adverse or potentially adverse effect on the legal proceeding.'

"*Recommendation of the Parties*

"100. The disciplinary administrator recommended that the respondent's license to practice law be suspended for 90 days. The disciplinary administrator did not recommend that the respondent be required to undergo a reinstatement hearing under Rule 232 (2022 Kan. S. Ct. R. at 293).

"101. The respondent recommended that he receive public censure.

15

"102. Accordingly, based upon the findings of fact, conclusions of law, aggravating and mitigating factors, and the Standards listed above, the hearing panel unanimously recommends that the respondent's license to practice law be suspended for 30 days. The hearing panel does not recommend that the respondent be required to undergo a reinstatement hearing under Rule 232 (2022 Kan. S. Ct. R. at 293).

"103. Costs are assessed against the respondent in an amount to be certified by the Office of the Disciplinary Administrator."

## DISCUSSION

In a disciplinary proceeding, the court considers the evidence, the panel's findings, and the parties' arguments and determines whether KRPC violations exist and, if they do, what discipline should be imposed. Attorney misconduct must be established by clear and convincing evidence. *In re Spiegel*, 315 Kan. 143, 147, 504 P.3d 1057 (2022); see Supreme Court Rule 226(a)(1)(A) (2022 Kan. S. Ct. R. at 281). Clear and convincing evidence is evidence that causes the fact-finder to believe that the truth of the facts asserted is highly probable. *In re Murphy*, 312 Kan. 203, 218, 473 P.3d 886 (2020).

A finding is considered admitted if exception is not taken. When exception is taken, the finding is typically not deemed admitted so the court must determine whether it is supported by clear and convincing evidence. *In re Hodge*, 307 Kan. 170, 209-10, 407 P.3d 613 (2017). If so, the finding will not be disturbed. The court does not reweigh conflicting evidence, assess witness credibility, or redetermine questions of fact when undertaking its factual analysis. *In re Hawver*, 300 Kan. 1023, 1038, 339 P.3d 573 (2014).

16

Respondent was given adequate notice of the formal complaint, to which he filed an answer. Prior to the hearing before the disciplinary panel, respondent entered into a joint agreement with the Disciplinary Administrator's office stipulating to violations of KRPC 1.15 (safekeeping property) (2022 Kan. S. Ct. R. at 372), KRPC 1.8 (conflict of interest, current clients, specific rules) (2022 Kan. S. Ct. R. at 350), KRPC 3.3 (candor toward the tribunal) (2022 Kan. S. Ct. R. at 391), and KRPC 1.9 (duties to former clients) (2022 Kan. S. Ct. R. at 358). No exceptions were filed in the case, and the findings of fact and conclusions of law in the hearing panel's final report are deemed admitted. Supreme Court Rule 228(g)(1), (2) (2022 Kan. S. Ct. R. at 287). The evidence before the panel clearly and convincingly established that the charged misconduct violated KRPC 1.15 (safekeeping property), KRPC 1.8 (conflict of interest, current clients, specific rules), KRPC 3.3 (candor toward the tribunal), and KRPC 1.9 (duties to former clients).

The only issue left for us to resolve is the appropriate discipline. The Disciplinary Administrator's office recommended that we suspend respondent's license to practice law for 90 days. The Disciplinary Administrator did not request or recommend that the respondent be subject to a reinstatement hearing under Supreme Court Rule 232 (2022 Kan. S. Ct. R. at 293). The respondent recommended that he receive public censure. The disciplinary panel recommended that we suspend respondent's license to practice law for 30 days and that he not be required to undergo a hearing prior to reinstatement.

This court is not bound by the recommendations made by the Disciplinary Administrator or the hearing panel. See *In re Long*, 315 Kan. 842, 853, 511 P.3d 952 (2022). Here, a majority of the court follows the recommendations of the Disciplinary Administrator. A minority of the court would have imposed a shorter period of suspension.

In adopting the discipline recommended by the Disciplinary Administrator's office, we considered the mitigating factors, including that respondent cooperated fully with the disciplinary process; he made a timely, good-faith effort to make restitution and remedy the consequences of his misconduct; he expressed genuine remorse; respondent has made significant contributions to charity and the community in his area; and his prior misconduct was remote in time and character to this misconduct.

Even so, we cannot overlook the fact that respondent's misconduct caused actual harm to his former client, S.R., who incurred fees and costs defending the civil suit Respondent filed against him. Respondent's misconduct also placed S.R.'s liberty in peril. Respondent wrongfully reported to law enforcement that S.R. had stolen Respondent's motorcycle. Respondent knew, or should have known, this misleading report could have provided the district court grounds to revoke S.R.'s probation (which Respondent previously negotiated on behalf of S.R.) and to sentence S.R. to a term of imprisonment. These facts, coupled with the other aggravating circumstances found by the panel, warrant a suspension greater than the 30-day period recommended by the panel. Thus, we order that respondent's license be suspended for 90 days.

CONCLUSION AND DISCIPLINE

IT IS THEREFORE ORDERED that Terrence J. Malone is suspended for 90 days from the practice of law in the state of Kansas, effective the date of this opinion, in accordance with Supreme Court Rule 225(a)(3) (2022 Kan. S. Ct. R. at 281) for violating KRPC 1.8, 1.9, 1.15, and 3.3.

IT IS FURTHER ORDERED that respondent shall comply with Supreme Court Rule 231 (2022 Kan. S. Ct. R. at 292) (notice to clients, opposing counsel, and courts following suspension or disbarment).

IT IS FURTHER ORDERED that the costs of these proceedings be assessed to respondent and that this opinion be published in the official Kansas Reports.

BILES and STANDRIDGE, JJ., not participating.