IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 126,270

In the Matter of KEVIN T. CURE,
*Respondent*.

ORIGINAL PROCEEDING IN DISCIPLINE

Original proceeding in discipline. Oral argument held January 31, 2024. Opinion filed May 3, 2024. Indefinite suspension.

*Kathleen J. Selzler Lippert*, Deputy Disciplinary Administrator, argued the cause and was on the formal complaint for the petitioner.

*Kevin T. Cure,* respondent, argued the cause pro se.

PER CURIAM:  This is an original proceeding in attorney discipline filed by the Office of the Disciplinary Administrator (ODA) against the respondent, Kevin T. Cure, an attorney admitted to the practice of law in Kansas in 1991. The following summarizes the history of this case before the court.

After the ODA filed a formal complaint against respondent alleging violations of the Kansas Rules of Professional Conduct (KRPC), Cure timely responded, admitting nearly all the factual allegations in the formal complaint. In due course, respondent filed a proposed probation plan. An appointed panel held a formal hearing on the complaint, during which respondent personally appeared, pro se. The hearing panel determined the respondent violated KRPC 1.2(a) (scope of representation) (2024 Kan. S. Ct. R. at 326); KRPC 1.3 (diligence) (2024 Kan. S. Ct. R. at 328); KRPC 1.4(a) (communication) (2024 Kan. S. Ct. R. at 329); KRPC 1.16 (a)(2), (3) (declining or terminating representation)

1

(2024 Kan. S. Ct. R. at 374); and KRPC 8.4(d) (professional misconduct) (2024 Kan. S. Ct. R. at 430).

More specifically, the panel made the following findings of fact and conclusions of law, together with its recommendation to this court:

"*Findings of Fact*

"11.     The hearing panel finds the following facts, by clear and convincing evidence:

"12.     On or about April 10, 2021, T.W. contacted the respondent about representing T.W. in two Cherokee County District Court criminal matters. The respondent told T.W. that he would charge a flat fee of $3,000.00 to represent T.W. in the two criminal cases.

"13.     On May 27, 2021, T.W. was charged in a third matter, case number 21-CR-000151, in Cherokee County District Cout with criminal threat, interference with law enforcement, battery on a law enforcement officer, domestic battery, and assault. The respondent told T.W. he would represent T.W. in this third case for an additional flat fee of $1,000.00, for a total flat fee for the three cases of $4,000.00. The respondent considered the flat fee earned upon receipt.

"14.     Later, the respondent and T.W. verbally modified the fee agreement for T.W. to pay the respondent $1,000.00 and for T.W.'s brother, D.W., to provide IT services for the respondent's business. On one or more occasions, D.W. asked the respondent for information necessary to complete the IT project; however, the respondent did not provide D.W. the requested information.

"15.     On May 28, 2021, the respondent filed an entry of appearance in T.W.'s Cherokee County District Court case 21-CR-000151. The respondent soon thereafter began plea negotiations with the prosecutor.

2

"16. On June 8, 2021, the respondent sent T.W. a text message that stated: '[T.W.], I don't mean to compound your problems but I didn't sign up to do this for free. I need $1,000 paid soon or I'll have to withdraw. I am now in a third case. I want to help you but you must understand that I am in business. I want to know when the thousand dollars will be paid and I will make arrangements to receive it. Please let me know your response by the end of tomorrow. Thank you.'

"17. On June 14, 2021, the day before T.W.'s first appearance, the respondent sent T.W. an email that stated:

'[T.W.], we shall seek a continuance tomorrow. I need for you to execute a release to disclose information and provide proof you are in a treatment program.

'It is not finalized, but I believe the prosecutor will be willing to lower the felonies to a level 7 or below to provide you a chance of probation.

'I will need $1,000.00 in cash to continue representing you by the July date to be set. If not received, I will withdraw. That is the beginning point. To date, $0 has been paid.

'Attached are the Zoom codes.'

"18. On June 15, 2021, the respondent sent T.W. a text to confirm that T.W. had the Zoom codes for the hearing, which T.W. confirmed. The respondent appeared for T.W. at his first appearance and a scheduling conference was set for July 27, 2021.

"19. On June 22, 2021, T.W.'s brother, D.W., paid the respondent $1,000.00 on T.W.'s behalf via Venmo. The respondent confirmed with T.W. that he received the payment.

"20. On July 22, 2021, the prosecutor emailed the respondent with plea offers on several cases, including T.W.'s case.

3

"21.     The respondent's file for T.W. includes a note that says: '[T.W.] 7/24/21—he accepted the offer of Kurt with the other two cases dismissed. One of the cases to be dismissed, ending in 59, will assist him greatly in his custody case, according to the client. .3 hrs.'

"22.     On July 29, 2021, staff from the prosecutor's office emailed the respondent a 'Journal Entry of Waiver of Preliminary Hearing and Bindover' and 'Plea Agreement' setting forth the prosecutor's offer in the 21-CR-000151 case.

"23.     The last note in the respondent's file is dated August 1, 2021; the respondent did not create or maintain any file notes after that date.

"24.     On August 11, 2021, T.W. sent the respondent a text message asking about signing the plea deal before he went to treatment. The respondent did not reply to T.W.'s request. T.W. wanted to sign the plea offer extended by the prosecutor in his case, but the respondent failed to provide T.W. a copy of the waiver or plea offer and failed to attempt to set any appointments with T.W. to review or sign the plea offer during the course of his representation.

"25.     On August 21, 2021, the respondent told court staff that T.W. agreed to enter a guilty plea.

"26.     On September 7, 2021, T.W. texted the respondent and stated, 'Treatment is completed.' The respondent replied, 'Yes!' T.W. also told the respondent about his discharge paperwork, outpatient treatment, and a release authorizing the respondent to get information about T.W.'s treatment.

"27.     On or about October 11, 2021, the respondent called T.W. and left a voice mail message, stating:

    '[T.W.] it's Kevin. I've withheld payment for services 'cause I haven't had time to get back to your brother with an organized approach. I'd like for you to come up with, ah, $400 [slurred] [P.C.] and [B.L.] for signs. You purchase them and deliver them so they don't use the money for other reasons and then they get

4

passed around and put into the ground . . . anyhow [T.W.] that is the deal. Take care.'

"28.     T.W. observed that the respondent sounded intoxicated on the October 11, 2021, voicemail message.

"29.     The respondent admitted that he had been drinking when he made this call to T.W.

"30.     On October 14, 2021, T.W. contacted the county sheriff to complain about the respondent's representation and stated that he understood the respondent's October 11, 2021, voicemail as preventing T.W. from signing and finalizing the plea agreement like T.W. wanted to until T.W. purchased campaign yard signs for two local candidates running for mayor of Galena and Galena City Council.

"31.     That same day, T.W. also contacted the prosecutor's office expressing frustration that the respondent refused to respond several times since August and was not willing to meet with T.W. to sign the plea agreement. T.W. said he was content with the plea offer.

"32.     The respondent acknowledged during the formal hearing that he withheld the plea agreement as leverage for having his attorney fee paid.

"33.     The respondent testified that during this time he experienced stress related to his law practice, particularly with the felony appointments, that made it difficult to keep up with his cases. Further, the respondent experienced stress related to handling his practice's administrative functions such as billing and other personal pressures.

"34.     On October 18, 2021, the disciplinary administrator's office received a written complaint from the sheriff who received T.W.'s complaint about the respondent. The disciplinary administrator notified the respondent in a letter dated October 20, 2021, that a complaint had been docketed for investigation and the respondent was asked to provide a written response.

5

"35.     The respondent left T.W. two voicemails after receiving notice of the disciplinary complaint. In one voicemail, the respondent stated:

'Hey [T.W.] I saw the complaint, ah, I always thought I had your backside and I know something weird happened that night, I apologize. I wish you'd call me. Thank you [T.W.].'

"36.     In the second voicemail, the respondent's tone and tempo was different from the first, and similar to that of his October 11, 2021, voicemail, which the respondent admitted he left while drinking alcohol. During an interview on September 26, 2022, the respondent acknowledged the tone of his voice was similar to the October 11, 2021, voicemail he left after drinking and he 'can't rule out' that he had been drinking when he made this call. In this voicemail, the respondent stated:

'Hello [T.W.] I'm going to assume you want another counsel and, ah, and can you, this great deal that I worked out . . . but, you let me know. Period. I'm going to file a motion to withdraw, given your bar complaint, and, honestly I have to tell 'ya I don't give a shit what happens in your life the rest the way because I did a great job. Thank you, thank you.'

"37.     On November 18, 2021, T.W. sent a text message to the respondent that said, among other things, that he did not want to have any more contact with the respondent.

"38.     Later that same day, the respondent sent T.W. a text message that he 'had to send [T.W.] one final text just now to know where to send the information' in the respondent's file for T.W. T.W. replied that he planned to proceed pro se and stated 'I'm going to respectfully ask you to withdraw.'

"39.     The respondent replied in a text message later that day:

'You seem to have yourself together today. You kept telling me that Chris was extorting fees from you and that was a reason you can't pay my attorney fees. I attempted to make every other arrangement to get those paid and save your life.

6

Here, you are as pthe [*sic*] most unappreciative and deceitful person I've ever seen. Your entire bar complaint was about you avoiding paying me. After numerous attempts to be reasonably paid you resorted to your current tactic. I know I look forward to going to all of your cases.

'Once more I'm gonna send you your paperwork assuming you have no counsel. I suppose you forgot who begged you to stay in the treatment in Oklahoma but ypjalways [*sic*] felt you're too smart for the system and always want to escape any obligations.'

"40.     T.W. responded to this text message referencing the agreement with respondent that his brother D.W. would do IT work for the respondent in lieu of payment of a portion of the fee but that the respondent did not get necessary information to D.W. to complete the work.

"41.     The respondent sent other unprofessional text messages to T.W. that same day, even after T.W. asked that the respondent stop contacting him, including:

'I hit the last tax [*sic*] before I drafted it do you have fat fingers but after that when you receive no more. I have recorded you as well.

'I promise you there will need to be no further contact as you took the money and that you're going to pay me and paid it to Meek.

'As always whether it's beating your women or otherwise it's always somebody else's fault.
[. . . .]
'Now then, if you want to burn fucking ridiculous tax roll then stay quiet now. I would suggest going back to hitting a woman but that seems something you're really good at.

'That is my last text unless you want to call me and have a decent conversation.'

"42.     The respondent indicated in the November 18, 2021, text string that he would send T.W. his client file but never did so.

"43.     On December 8, 2021, the respondent tested positive for COVID-19 and an isolation order was issued the next day directing the respondent to isolate at his home in Joplin, Missouri.

"44.     On December 20, 2021, the respondent provided a written response to the complaint in this matter to the disciplinary administrator. The respondent stated that a judge in Cherokee County retired on July 31, 2021, and it was unclear who would hear the felony pleas. Further, the respondent stated that his voicemail message to T.W. on October 11, 2021, was a 'negotiation attempt to have him pay some of his fees.'

"45.     The disciplinary investigator asked the respondent several times if he believed that he could refuse to let his client have a copy of the plea deal because of non-payment. The respondent did not answer the question, but did say that he was not pulling the plea deal, he just wanted to get paid.

"46.     On January 8 and 23, 2022, the respondent filed motions to withdraw from T.W.'s criminal case.

"47.     The respondent failed to send T.W. a copy of the July 29, 2021, plea offer or return the client file to T.W. any time before or after his motion to withdraw.

"48.     The respondent was previously disciplined on May 10, 2019, at which time the Supreme Court suspended the respondent's license to practice law for a period of 18 months and ordered that the respondent be required to undergo a reinstatement hearing. In the prior matter, the respondent's misconduct was based on his four criminal convictions of driving while intoxicated, the effects of his incarceration and intoxication on his ability to perform his duties as a lawyer, and his failure to report a felony conviction to the disciplinary administrator's office.

"49.     On March 8, 2021, the respondent was reinstated to the practice of law. In its order granting the respondent's reinstatement, the Supreme Court ruled that his

reinstatement was subject to his entering into a one-year monitoring agreement with KALAP.

"50.     The 2021 and 2022 KALAP monitoring agreements the respondent entered [by] law into with KALAP required, among other things, indefinite abstinence from the use of alcoholic beverages.

"51.     The respondent agreed that he had not substantially complied with the 2021 or 2022 KALAP monitoring agreements. The respondent acknowledged that he had been consuming alcohol since his reinstatement and had last consumed alcohol four to five days prior to the formal hearing.

"52.     The respondent also testified that he was on probation for his Missouri law license during the same time, and that he violated that probation plan by consuming alcohol.

"53.     The respondent's Missouri probation plan and his KALAP monitoring agreements also required the respondent to attend a certain number of Alcoholics Anonymous meetings, which the respondent did not complete.

"*Conclusions of Law*

"54.     Based upon the findings of fact, the hearing panel concludes as a matter of law that the respondent violated KRPC 1.2(a) (scope), 1.3 (diligence), 1.4(a) (communication), 1.16(a) (declining or terminating representation), and 8.4(d) (misconduct prejudicial to the administration of justice), as detailed below.

"KRPC 1.2(a)

"55.     Lawyers must 'abide by a client's decisions concerning the lawful objectives of representation . . . and shall consult with the client as to the means which the lawyer shall choose to pursue.' KRPC 1.2(a). 'In a criminal case, the lawyer shall abide by the client's decision, after consultation with the lawyer, as to a plea to be entered, whether to waive jury trial and whether the client will testify.' Id.

"56.     The respondent failed to send a copy of the plea agreement to T.W. and also failed to abide by T.W.'s decision to execute a plea agreement in his 21-CR-000151 Cherokee County District Court criminal matter.

"57.     Further, the respondent violated KRPC 1.2(a) when he failed to promptly comply with T.W.'s request that the respondent withdraw from the 21-CR-000151 Cherokee County District Court criminal case.

"58.     The respondent stipulated that he violated KRPC 1.2(a).

"59.     Accordingly, the hearing panel concludes that the respondent violated KRPC 1.2(a).

"KRPC 1.3

"60.     Attorneys must act with reasonable diligence and promptness in representing their clients. See KRPC 1.3.

"61.     The respondent failed to diligently and promptly represent T.W. in his criminal case by failing to take any steps during his representation of T.W. to get a copy of the plea agreement to T.W. for T.W. to sign and return to the prosecutor or the court.

"62.     Further, in a text message dated November 18, 2021, the respondent stated he would send T.W.'s paperwork to T.W. but never did so.

"63.     The respondent stipulated that he violated KRPC 1.3.

"64.     Because the respondent failed to act with reasonable diligence and promptness in representing T.W., the hearing panel concludes that the respondent violated KRPC 1.3.

10

"65.     KRPC 1.4(a) provides that '[a] lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.'

"66.     The respondent did not adequately communicate with T.W. when the respondent did not provide T.W. a copy of the plea agreement after T.W. requested a copy.

"67.     The respondent stipulated that he violated KRPC 1.4(a).

"68.     Accordingly, the hearing panel concludes that the respondent violated KRPC 1.4(a).

"KRPC 1.16(a)(2)

"69.     Lawyers must withdraw from representing a client under certain circumstances. KRPC 1.16(a)(2) specifically provides that:

'(a)     Except as stated in paragraph (c), a lawyer shall not represent a client or, where representation has commenced, shall withdraw from the representation of a client if:

[. . . .]

(2)     the lawyer's physical or mental condition materially impairs the lawyer's ability to represent the client.'

"70.     The respondent experienced stress related to his law practice, particularly with the felony appointments, that made it difficult to keep up with his cases. Further, the respondent experienced stress related to handling his practice's administrative functions such as billing and other personal pressures.

11

"71.      These stressors culminated in the respondent's consumption of alcohol and current conduct related to T.W.'s matter.

"72.      Further, the respondent testified that drinking alcohol is still an issue for him. The respondent admitted that some of the unprofessional statements he made to T.W. are not things that he would have said to a client when sober.

"73.      The respondent stipulated that he violated KRPC 1.16(a)(2).

"74.      The hearing panel concludes that the respondent's use of alcohol and the stress he underwent while representing T.W. materially impaired the respondent's ability to represent T.W. Accordingly, the hearing panel concludes the respondent violated KRPC 1.16(a)(2).

"KRPC 1.16(a)(3)

"75.      Lawyers must withdraw from representing a client when, 'the lawyer is discharged.' KRPC 1.16(a)(3).

"76.      T.W. asked the respondent to withdraw from representing T.W. in the Cherokee County District Court criminal matter via text message on November 18, 2021.

"77.      The respondent did not file motions to withdraw until January 8 and 23, 2022.

"78.      The respondent stipulated that he violated KRPC 1.16(a)(3).

"79.      Accordingly, the hearing panel concludes that the respondent violated KRPC 1.16(a)(3).

"KRPC 8.4(d)

"80.      'It is professional misconduct for a lawyer to . . . engage [in] conduct that is prejudicial to the administration of justice.' KRPC 8.4(d).

"81.    The respondent withheld the plea agreement from T.W. as leverage to receive payment for his legal fees. Further, the respondent failed to promptly withdraw as counsel for T.W. in the Cherokee County District Court criminal matter when T.W. requested he do so. This conduct was prejudicial to the administration of justice.

"82.    The respondent stipulated that he violated KRPC 8.4(d).

"83.    Therefore, the hearing panel concludes that the respondent violated KRPC 8.4(d).

"*American Bar Association*
*Standards for Imposing Lawyer Sanctions*

"84.    In making this recommendation for discipline, the hearing panel considered the factors outlined by the American Bar Association in its Standards for Imposing Lawyer Sanctions (hereinafter 'Standards'). Pursuant to Standard 3, the factors to be considered are the duty violated, the lawyer's mental state, the potential or actual injury caused by the lawyer's misconduct, and the existence of aggravating or mitigating factors.

"85.    Duty Violated. The respondent violated his duty to his client and the legal profession.

"86.    Mental State. The respondent knowingly violated his duty.

"87.    Injury. As a result of the respondent's misconduct, the respondent caused injury to T.W. by causing unnecessary frustration and diminishing T.W.'s confidence in the respondent's representation and unnecessary delay in resolution of T.W.'s criminal matters.

13

"88.     Aggravating circumstances are any considerations or factors that may justify an increase in the degree of discipline to be imposed. In reaching its recommendation for discipline, the hearing panel, in this case, considered the following aggravating factors:

"89.     Prior Disciplinary Offenses. The respondent was previously disciplined on May 19, 2019. The Supreme Court suspended the respondent's license to practice law for a period of 18 months, beginning on the date of his temporary suspension, July 13, 2018, and ordered that the respondent be required to undergo a reinstatement hearing. The respondent's license was reinstated by order of the Supreme Court on March 18, 2021. The respondent's recent prior discipline is an aggravating factor.

"90.     Dishonest or Selfish Motive. The hearing panel concludes that the respondent's misconduct was motivated by selfishness. While T.W. ultimately was able to secure the benefit of the negotiated plea agreement, the respondent withheld the plea agreement from T.W. for several months to compel payment from T.W. The respondent's selfish motive is an aggravating factor.

"91.     A Pattern of Misconduct. The disciplinary administrator's office argued that the respondent's prior 2019 disciplinary case and the misconduct here represent a pattern of misconduct. With the exception of the KRPC 8.4(d) violation, the rules violated in the 2019 case are different from those violated in this matter. In the 2019 case, the respondent's misconduct was based on his four criminal convictions of driving while intoxicated, the effects of his resulting incarceration and intoxication on his legal duties, and his failure to report a felony conviction to the disciplinary administrator's office. The misconduct here involves the respondent's failure to comply with his duties to T.W. regarding the negotiated plea agreement and withdrawal from the case. While the respondent's use of alcohol was clearly a common factor between these two disciplinary matters, the misconduct involved in this case is different from that in the prior case. The hearing panel concludes that this aggravating factor does not apply here.

14

"92.     Multiple Offenses. The respondent violated KRPC 1.2(a) (scope), 1.3 (diligence), 1.4(a) (communication), 1.16(a) (declining or terminating representation), and 8.4(d) (misconduct prejudicial to the administration of justice), in the way he handled T.W.'s case. The respondent committed multiple offenses, which is an aggravating factor.

"93.     Substantial Experience in the Practice of Law. The Kansas Supreme Court admitted the respondent to practice law in the State of Kansas on April 26, 1991. At the time of the misconduct, the respondent had been practicing law for approximately 30 years. However, from July 13, 2018, until March 8, 2021, the respondent was suspended. He had only been reinstated to the practice of law for a few months when the misconduct occurred. Further, the respondent testified that he had been off the felony appointment list and rarely handled any felony cases from 2006 until his reinstatement in 2021. Therefore, the hearing panel concludes that the respondent was significantly out of practice in this area of the law and cannot be considered to have substantial experience in the area of law involved in this matter. The respondent was overwhelmed with his felony appointments, which clearly contributed to his misconduct. The hearing panel does not consider this an aggravating factor.

"94.     Mitigating circumstances are any considerations or factors that may justify a reduction in the degree of discipline to be imposed. In reaching its recommendation for discipline, the hearing panel, in this case, considered the following mitigating factors:

"95.     Personal or Emotional Problems if Such Misfortunes Have Contributed to Violation of the Kansas Rules of Professional Conduct. The respondent testified that he experienced significant stress related to his law practice and case overload associated with the felony appointment list that made it difficult to keep up with his cases. The respondent also experienced stress related to handling his practice's administrative functions such as billing and other personal pressures. Further, the respondent testified that drinking alcohol is still an issue for him. These stressors culminated in the respondent's consumption of alcohol and current conduct related to T.W.'s matter. In addition, the respondent has had to deal with several health conditions that contributed to his overall stress and difficulty maintaining professional conduct. The hearing panel

15

concludes that the respondent's personal or emotional problems contributed to his violation of the Kansas Rules of Professional Conduct, which is a mitigating factor.

"96.    The Present and Past Attitude of the Attorney as Shown by His Cooperation During the Hearing and His Full and Free Acknowledgment of the Transgressions. The respondent fully cooperated with the disciplinary process. The respondent entered into a joint stipulation with the disciplinary administrator's office that admitted the facts and KRPC violations alleged in the formal complaint. Ms. Lippert agreed that the respondent was cooperative during the disciplinary process and that this mitigating factor applies. The hearing panel concludes the respondent's present and past attitude as shown by his cooperation and acknowledgment of the transgressions is a mitigating factor.

"97.    Mental Disability or Chemical Dependency Including Alcoholism or Drug Abuse. The evidence presented clearly establishes that the respondent suffers from a dependency on alcohol. This is a mitigating factor when the following four factors are all met: '(1) there is medical evidence that the respondent is affected by a chemical dependency or mental disability; (2) the chemical dependency or mental disability caused the misconduct; (3) the respondent's recovery from the chemical dependency or mental disability is demonstrated by a meaningful and sustained period of successful rehabilitation; and (4) the recovery arrested the misconduct and recurrence of that misconduct is unlikely.' ABA Standards for Imposing Lawyer Sanctions 9.32(i)(1)-(4). The hearing panel concludes that the evidence establishes that the first two factors are met. However, the evidence showed that factors 3 and 4 have not been met, as the respondent has not recovered from his alcohol dependency as demonstrated by a meaningful and sustained period of successful rehabilitation and the evidence did not establish that the misconduct was arrested and that recurrence of the misconduct is unlikely. The hearing panel concludes that this mitigating factor does not apply here.

"98.    Remorse. The respondent stipulated that his conduct violated the rules of professional conduct and showed genuine remorse for having committed the misconduct. The respondent's remorse is a mitigating factor.

16

"99.    In addition to the above-cited factors, the hearing panel has thoroughly examined and considered the following Standards:

'4.42    Suspension is generally appropriate when:

(a)    a lawyer knowingly fails to perform services for a client and causes injury or potential injury to a client; or

(b)    a lawyer engages in a pattern of neglect [and] causes injury or potential injury to a client.'

'6.22    Suspension is generally appropriate when a lawyer knows that he or she is violating a court order or rule, and causes injury or potential injury to a client or a party, or causes interference or potential interference with a legal proceeding.'

'7.2    Suspension is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed as a professional and causes injury or potential injury to a client, the public, or the legal system.'

'8.1    Disbarment is generally appropriate when a lawyer:

(a)    intentionally or knowingly violates the terms of a prior disciplinary order and such violation causes injury or potential injury to a client, the public, the legal system, or the profession; or

(b)    has been suspended for the same or similar misconduct, and intentionally or knowingly engages in further similar acts of misconduct that cause injury or potential injury to a client, the public, the legal system, or the profession.'

'8.2    Suspension is generally appropriate when a lawyer has been reprimanded for the same or similar misconduct and engages in further similar

17

acts of misconduct that cause injury or potential injury to a client, the public, the legal system, or the profession.'

'8.3     Reprimand is generally appropriate when a lawyer:

(a)     negligently violates the terms of a prior disciplinary order and such violation causes injury or potential injury to a client, the public, the legal system, or the profession; or

(b)     has received an admonition for the same or similar misconduct and engages in further similar acts of misconduct that cause injury or potential injury to a client, the public, the legal system, or the profession.'

'8.4     An admonition is generally not an appropriate sanction when a lawyer violates the terms of a prior disciplinary order or when a lawyer has engaged in the same or similar misconduct in the past.'

"*Recommendation of the Parties*

"100.    The disciplinary administrator recommended that the respondent be suspended for a period of two years with the requirement that the respondent undergo a reinstatement hearing pursuant to Supreme Court Rule 232.

"101.    The respondent recommended that he be placed on probation according to the terms of his proposed probation plan.

"*Discussion*

"102.    When a respondent requests probation, the hearing panel is required to consider Rule 227, which provides:

18

'(d)     Restrictions on Recommendation of Probation. A hearing panel may not recommend that the respondent be placed on probation unless the following requirements are met:

(1)     the respondent complies with subsections (a) and (c) and the proposed probation plan satisfies the requirements in subsection (b);

(2)     the misconduct can be corrected by probation; and

(3)     placing the respondent on probation is in the best interests of the legal profession and the public.'

"103.    Rule 227(c) requires that the respondent 'establish that the respondent has been complying with each condition in the probation plan for at least 14 days prior to the hearing.'

"104.    During the November 30, 2022, prehearing conference, the hearing panel inquired whether the respondent had reviewed Rule 227. The respondent stated that he was familiar with Rule 227. The panel noted that Rule 227 requires a respondent to file a proposed probation plan at least 14 days prior to the formal hearing, comply with the plan, and provide evidence that the plan is in place during the formal hearing.

"105.    Here, an important part of the respondent's proposed probation plan is supervision of his law practice by attorney Gene Barrett. The respondent's plan proposed bi-weekly meetings between Mr. Barrett and the respondent to review the respondent's cases, files, calendar, and trust account records during which the respondent would discuss any problems, deadlines, court appearances, and his planned course of action in his cases.

"106.    The respondent testified that he first spoke with his proposed practice supervisor, Gene Barrett, about supervising the respondent the day before the formal hearing, though, he thought he mentioned needing Mr. Barrett's help in this case 3 to 4 weeks prior to the hearing. Mr. Barrett testified that the respondent sent Mr. Barrett a copy of the proposed probation plan either the night before or the morning of the formal

hearing. Mr. Barrett first saw the probation plan in his email inbox the morning of the formal hearing. Mr. Barrett had not met with the respondent regarding the plan and testified that the respondent had not provided Mr. Barrett with an inventory of his cases and clients as required by the plan. Mr. Barrett was unaware that the current disciplinary matter involved the respondent's representation of a client, and instead believed it stemmed from the respondent receiving a DUI. Mr. Barrett had no knowledge of whether the respondent presently maintained sobriety.

"107.    Further, the Probation Plan requires the respondent to comply with the KALAP monitoring agreement. The most recent 2022 KALAP monitoring agreement requires, among other things, that the respondent abstain indefinitely from the use of alcoholic beverages and attend Alcoholics Anonymous meetings at least daily. The respondent testified that he has not substantially complied with the 2021 or 2022 KALAP monitoring agreements.

"108.    The respondent acknowledged that he had been consuming alcohol since his reinstatement and had last consumed alcohol four to five days prior to the formal hearing. Further, the respondent has not attended Alcoholics Anonymous meetings as required by the KALAP agreement.

"109.    The hearing panel concludes that the respondent failed to establish that he 'has been complying with each condition in the probation plan for at least 14 days prior to the hearing' as required by Rule 227(c).

"110.    Further, the hearing panel concludes that the respondent's proposed probation plan does not satisfy the requirements of Rule 227(b) because it does not describe a sufficient plan for the respondent to address his dependency on alcohol or for suitable supervision of his law practice. Because of this, the plan is not 'substantial' or 'detailed,' nor does it 'contain adequate safeguards that address the professional misconduct committed, protect the public, and ensure the respondent's compliance with the Kansas Rules of Professional Conduct, the Rules Relating to Discipline of Attorneys, and the attorney's oath of office.' Rule 227(b)(1) and (2).

20

"111.    For these reasons, pursuant to Rule 227(d), the hearing panel concludes that it may not recommend that the respondent be placed on probation.

"112.    However, while the misconduct involved in this case is serious, the hearing panel concludes that the respondent's conduct in his 2019 disciplinary matter was much more serious, warranting the resulting 18-month suspension. In the prior matter, the respondent was convicted of driving under the influence of alcohol on four occasions, the last conviction being a felony. The respondent's crimes had resulting effects on his ability to perform his duties as a lawyer, as he was too intoxicated to appear in court at all as municipal prosecutor on one occasion and missed court due to his incarceration on another occasion.

"113.    The respondent's misconduct here, while serious, did not rise to the same level of the criminal conduct and misconduct involved in the 2019 matter. Therefore, keeping in mind that this is not the respondent's first disciplinary matter, the hearing panel recommends discipline that is tailored to the specific misconduct at issue here. The hearing panel believes that the discipline recommended below, in connection with a reinstatement hearing requiring proof of specific requirements aimed at ensuring the respondent's dependence on alcohol is properly addressed before he is reinstated, is appropriate.

"114.    The hearing panel notes that it considered ABA Standard 8 in determining the appropriate discipline to recommend because the Supreme Court's reinstatement order required the respondent to enter 'a one-year monitoring agreement with KALAP.' The evidence established that the respondent failed to comply with the KALAP monitoring agreement, which violated the Court's reinstatement order.

"*Recommendation of the Hearing Panel*

"115.    Based upon the findings of fact, conclusions of law, and the Standards listed above, the hearing panel recommends that the respondent be suspended for a period of one year. The hearing panel further recommends that the respondent be required to undergo a reinstatement hearing pursuant to Rule 232.

21

"116.    The hearing panel recommends that prior to reinstatement, the respondent be required to show that he has followed the recommendations of Kendall Heiman, LSCSW, LCAC as listed in pages 26-28 of Ms. Heiman's Amended Evaluation Summary, which was based on Ms. Heiman's evaluation of the respondent on December 28, 2022.

"117.    Costs are assessed against the respondent in an amount to be certified by the Office of the Disciplinary Administrator."

## DISCUSSION

In an attorney disciplinary proceeding, the court considers the evidence, the panel's findings, and the parties' arguments and determines whether KRPC violations exist and, if they do, what discipline should be imposed. Attorney misconduct must be established by clear and convincing evidence. *In re Spiegel*, 315 Kan. 143, 147, 504 P.3d 1057 (2022); see Supreme Court Rule 226(a)(1)(A) (2024 Kan. S. Ct. R. at 279). Clear and convincing evidence is evidence that causes the fact-finder to believe that the truth of the facts asserted is highly probable. *In re Murphy*, 312 Kan. 203, 218, 473 P.3d 886 (2020).

A finding is considered admitted if exception is not taken. When exception is taken, the finding is typically not deemed admitted so the court must determine whether it is supported by clear and convincing evidence. *In re Hodge*, 307 Kan. 170, 209-10, 407 P.3d 613 (2017). If so, the finding will not be disturbed. The court does not reweigh conflicting evidence, assess witness credibility, or redetermine questions of fact when undertaking its factual analysis. *In re Hawver*, 300 Kan. 1023, 1038, 339 P.3d 573 (2014).

The respondent was given adequate notice of the formal complaint and timely responded. The respondent was also given adequate notice of the hearing before the panel

22

and the hearing before this court. He did not file exceptions to the hearing panel's final hearing report.

With no exceptions before us, the panel's factual findings and conclusions of law are deemed admitted by the respondent and ODA. Supreme Court Rule 228(g)(1), (2) (2024 Kan. S. Ct. R. at 285). We agree with the panel in holding that respondent violated KRPC 1.2(a) (scope of representation); KRPC 1.3 (diligence); KRPC 1.4(a) (communication); KRPC 1.16 (a)(2), (3) (declining or terminating representation); and KRPC 8.4(d) (professional misconduct).

The only remaining issue is to decide the appropriate discipline for these violations. The hearing panel recommended the respondent be suspended for one year and required to undergo a reinstatement hearing pursuant to Supreme Court Rule 232 (2024 Kan. S. Ct. R. at 290). The hearing panel also recommended certain conditions before reinstatement. Before this court, both the ODA and respondent recommend respondent be suspended for one year and required to undergo a reinstatement hearing.

This court is not bound by any recommendations. *In re Long*, 315 Kan. 842, 853, 511 P.3d 952 (2022). The court is cognizant that "'[o]ur primary concern must remain protection of the public interest and maintenance of the confidence of the public and the integrity of the Bar.' [Citation omitted.]" *In re Jones*, 252 Kan. 236, 241, 843 P.2d 709 (1992).

After considering the evidence presented, all recommendations, and aggravating and mitigating circumstances, we conclude appropriate discipline is respondent's indefinite suspension from the practice of law. A minority of the court would impose a lesser penalty.

23

Should respondent wish to have his license to practice law reinstated at some point, he must apply for reinstatement pursuant to Rule 232. Though we acknowledge the hearing panel urged us to set conditions before reinstatement would be considered, we decline to do so.

Costs are assessed against the respondent in an amount to be certified by the Office of the Disciplinary Administrator.

CONCLUSION AND DISCIPLINE

IT IS THEREFORE ORDERED that Kevin T. Cure is indefinitely suspended from the practice of law in the state of Kansas, effective the date of this opinion, in accordance with Supreme Court Rule 225(a)(2) (2024 Kan. S. Ct. R. at 278) for violations of KRPC 1.2(a), 1.3, 1.4(a), 1.16(a)(2), (3), and 8.4(d).

IT IS FURTHER ORDERED that respondent shall comply with Supreme Court Rule 231 (2024 Kan. S. Ct. R. at 289).

IT IS FURTHER ORDERED that if respondent applies for reinstatement, he shall comply with Rule 232 and be required to undergo a reinstatement hearing.

IT IS FURTHER ORDERED that the costs of these proceedings be assessed to respondent and that this opinion be published in the official Kansas Reports.

24